**UNITED STATES of America, Plaintiff–Appellee/Cross–Appellant (95–5357),**

v.

**Bobby Gene BRANHAM (95–5213), Jerry Lee Allen (95–5241), Robert Jackson Reynolds (95–5490), Defendants–Appellants,**

**Jerry Lee Allen, Defendant–Appellant/Cross–Appellee (95–5357).**

Nos. 95–5213, 95–5241, 95–5357 and 95–5490.

United States Court of Appeals, Sixth Circuit.

Argued April 9, 1996.

Decided Oct. 4, 1996.

---

attempting to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, and 18 U.S.C. § 2. Pursuant to 21 U.S.C. § 853, the defendants were also required to forfeit $68,799 in United States currency that was seized from them at the time of their arrests, by reason of the violation of § 846. On appeal, the defendants raise various challenges to their convictions and sentences. The government cross-appeals Allen's sentence, challenging the district court's application of amendment 506 to the United States Sentencing Guidelines (U.S.S.G.) section 4B1.1, in connection with Allen's sentencing as a "career offender." For the following reasons, we AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.

James E. Arehart, Asst. U.S. Attorney (argued), Mark A. Wohlander, Asst. U.S. Attorney (briefed), Office of the U.S. Attorney, Lexington, KY, for U.S. in Nos. 95–5213, 95–5241, 95–5357 and 95–5490.

Matthew W. Breetz (argued and briefed), McBrayer, McGinnis, Leslie & Kirkland, Lexington, KY, for Bobby Gene Branham in No. 95–5213.

Charles Stanford West (argued and briefed), Williamson, WV, for Jerry Lee Allen in Nos. 95–5241, 95–5357.

Stephen G. Amato (argued and briefed), Miller, Griffin & Marks, Lexington, KY, for Robert Jackson Reynolds, III, in No. 95–5490.

Before: SUHRHEINRICH and SILER, Circuit Judges; ALDRICH, Senior District Judge.*

ANN ALDRICH, Senior District Judge.

Bobby Branham, Jerry Lee Allen, and Robert Jackson Reynolds were convicted of conspiring to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, and of aiding and abetting each other in

## I.

In November of 1993, the Lexington Drug Enforcement Administration (DEA) Task Force began investigating Branham for alleged drug trafficking. Chuck Cordle, a confidential government informant, first approached Branham at his used car dealership in Mount Sterling, Kentucky. Soon after the two became acquainted, their conversations turned to drugs. In February of 1994, Cordle introduced Branham to Detective Van Spencer, acting as a businessman from Georgia who imported large quantities of marijuana from Mexico. Thereafter, Spencer contacted Branham several times regarding Branham's interest in purchasing marijuana. Spencer informed Branham that he dealt exclusively in amounts of marijuana between 100 and 500 pounds, at between $650 and $1,000 per pound. After further contacts, Branham agreed to meet Spencer at a restaurant in Winchester, Kentucky on July 6, 1994 to examine a quantity of marijuana.

On the day of the meeting, Branham arrived at the restaurant with defendant Reynolds. Branham advised Spencer that there was now a third party involved in the negotiations who did not want to meet with Spencer but did want a sample of the marijuana. When Spencer questioned Reynold's pres-

---

* The Honorable Ann Aldrich, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

ence, Branham assured Spencer that Reynolds was "all right, he's representing the other guy."

Thereafter, Spencer led Branham and Reynolds to a nearby parking lot where a Ryder rental truck was being guarded by two undercover police officers, DEA agent Stephen Koerner and Ron Compton of the Lexington Police Department. Branham climbed into the back of the truck, opened one of the boxes with a razor blade and commented that the marijuana "smelled good." Branham then called to Reynolds, who joined Branham in the back of the truck. Branham removed a sample of marijuana, handed it to Reynolds who then put the marijuana in his back pocket. At the conclusion of the meeting, Branham told Spencer to contact him the next morning, after Branham and Reynolds would have had an opportunity to sample the marijuana.

Spencer called Branham the next morning at 7:00 a.m. Branham informed Spencer that the chief financial backer liked the marijuana. The parties met again that evening at approximately 6:30 p.m. at Jerry's Restaurant in Lexington, Kentucky. Branham informed Spencer that they would have to take the marijuana to a location near Boonesboro State Park where the financial backer was waiting to inspect the marijuana. Spencer refused, and Branham and Reynolds left, indicating that they would be back in thirty to forty minutes. Branham later admitted that he and Reynolds drove to John Rayburn's residence where they met with defendant Allen.

Around 7:30 p.m., Branham and Reynolds returned to the restaurant parking lot. Branham came over to the vehicle where Spencer was waiting and told Spencer that he had his $20,000. A short time later, Allen arrived in a separate vehicle and parked several parking spaces away from where Branham and Spencer were standing. Spencer and Branham returned to Branham's vehicle. Branham then reached into the console and retrieved $20,000. During this time, Reynolds remained in the passenger seat of Branham's vehicle. Branham and Spencer then walked over to Allen's truck. Allen held up a plastic bag containing a

bundle of U.S. currency. When Spencer questioned whether they had enough money to purchase fifty pounds, Branham replied, "We've got enough." While Spencer was with Branham and Allen, officer Koerner remained with Reynolds. Koerner asked Reynolds if they had the money, to which Reynolds responded that that was what the others were discussing.

Shortly after the negotiations concluded, the defendants were arrested. The officers then proceeded to search the defendants and their vehicles. The officers recovered $26,000 from the plastic bag, $18,300 from a pistol case on the seat of Allen's truck, $20,000 from the console in Branham's vehicle, and $4,258 from Reynolds for a total of $68,799.

On July 21, 1994, a federal grand jury returned a two count indictment against the defendants for violating 21 U.S.C. §§ 846 and 853, and 18 U.S.C. § 2. On July 29, 1994, all three defendants entered pleas of not guilty to both counts. Trial was then scheduled for September 26, 1994. The district court denied Allen's and Reynolds' motions to dismiss the indictment alleging that the indictment was insufficient on its face. On September 1, 1994, a superseding indictment was returned against all defendants. That indictment added an additional count charging the defendants with conspiracy to possess with the intent to distribute marijuana in violation of 21 U.S.C. § 846. The indictment not only added the conspiracy count, but also cured the claimed defects alleged in the motions to dismiss. A new trial date was set for November 7, 1994. The district court denied all three defendants' motions to dismiss the indictment which alleged prosecutorial vindictiveness.

After a two-day trial, the jury convicted the defendants and rendered a special judgment of forfeiture. The defendants' motion for a new trial based upon allegations of juror misconduct was denied on December 29, 1994 after an evidentiary hearing.

In Reynold's motion for a new trial, he also raised for the first time his mental capacity to stand trial. Reynolds claimed that as the result of an earlier motorcycle acci-

dent he was unable to effectively assist his counsel at trial. On December 27, 1994, the court committed Reynolds to the custody of the Attorney General for study and observation. After the study was concluded, the court conducted an evidentiary hearing, and found, by a preponderance of the evidence, that Reynolds had the required mental capacity to assist his counsel at trial.

Branham was sentenced to forty-one months imprisonment; Allen to sixty months imprisonment; and Reynolds to thirty-three months imprisonment. The defendants' timely appeal and the United States' cross-appeal followed.

## II.

These consolidated appeals, together with the government's cross appeal, present two questions of first impression in this circuit: (1) whether double jeopardy protections are implicated in an administrative forfeiture after denial of a petition for remission or mitigation has been filed; and (2) whether the Sentencing Commission exceeded its statutory authority in its amendment to note 2 of the United States Sentencing Guidelines (U.S.S.G.) § 4B.1, the Career Offender Guideline. The defendants also raise nine other arguments concerning their convictions and sentencing.

## III.

Allen argues that the forfeiture of $44,541 in U.S. currency and a 1987 GMC Pick–Up truck separate from his criminal prosecution constitutes double jeopardy as proscribed by the fifth amendment to the United States Constitution. On August 1, 1994, Allen received two "notices of seizure" from the DEA, one for the currency, and a separate one for the vehicle. The DEA explained that these items were seized pursuant to 21 U.S.C. § 881 because they were used or acquired as a result of the drug-related offense. Allen submitted timely petitions for remission or mitigation for both items. On No-

vember 18, 1994, Allen received a letter from the DEA stating that his petition in regard to the currency had been denied "because it did not satisfactorily meet the requirements for remission or mitigation." On November 24, 1991, he received a similar rejection letter for the vehicle. Because Allen failed to file a timely claim and cost bond, the property was administratively forfeited. 19 U.S.C. § 1607(a).

■ Allen was originally indicted on July 1, 1994. The superseding indictment was issued on September 1, 1994. The jury was sworn on November 8, 1994, and Allen was convicted on November 10, 1994. Allen claims that the administrative seizure and forfeiture of the currency and his vehicle constituted punishment for purposes of double jeopardy in his subsequent drug prosecution. We review *de novo* the constitutional issue of double jeopardy. *United States v. Ursery*, 59 F.3d 568, 570 (6th Cir.1995), *rev'd on other grounds*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

### A.

■ Our initial concern in this matter is whether Allen raised his double jeopardy argument prior to trial. Rule 12(b)(1)[1] of the Federal Rules of Criminal Procedure dictates that Allen was required to raise the jeopardy issue by motion prior to trial. Review of the record before us indicates that Allen failed to raise the jeopardy issue at any time prior to or during his criminal prosecution. "As a general rule, we will not consider issues not presented to and considered by the district court." *United States v. Harris*, 9 F.3d 493, 499 (6th Cir.1993) (citing *United States v. Pickett*, 941 F.2d 411, 415 (6th Cir.1991)). Nonetheless, Rule 52(b) of the Federal Rules of Criminal Procedure provides us with the authority to correct plain errors that were not raised during the proceedings before the district court. Fed.

---

1. Fed.R.Crim.P. 12(b)(1) provides in relevant part:

Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by

motion. The following must be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution.

R.Crim.P. 52(b).[2] The Supreme Court recently clarified the appropriate procedure for review by the appellate courts of objections not raised in the district court. *See United States v. Olano,* 507 U.S. 725, 731–32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). The *Olano* Court made it clear that although forfeited rights are reviewable, waived rights are not, even for plain error. *Id.* at 733, 113 S.Ct. at 1777. ("Mere forfeiture, as opposed to waiver, does not extinguish an 'error' under Rule 52(b)."). Distinguishing the two, the Court explained that forfeiture is "the failure to make the timely assertion of a right," whereas waiver is the "relinquishment or abandonment of a known right." *Id.* (citations and quotations omitted).

■■■■ The defense of double jeopardy is personal and is capable of waiver. *United States v. Broce,* 488 U.S. 563, 568, 109 S.Ct. 757, 761, 102 L.Ed.2d 927 (1989). In the context of a plea bargain or guilty plea, it is quite clear that double jeopardy is subject to intelligent and voluntary waiver. *See Ricketts v. Adamson,* 483 U.S. 1, 11, 107 S.Ct. 2680, 2686, 97 L.Ed.2d 1 (1987) (concluding double jeopardy clause is not implicated where defendant enters a plea bargain); *Broce,* 488 U.S. at 575, 109 S.Ct. at 765 (finding that guilty plea made voluntarily and intelligently was not subject to collateral attack on appeal). However, in Allen's case, it appears that he simply failed to raise this issue below, and took no affirmative steps to voluntarily waive his claim. In similar circumstances, three other circuits have concluded that a failure to assert double jeopardy at the trial level constituted a forfeiture of that right, and not a waiver. *See United States v. Penny,* 60 F.3d 1257, 1261 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996); *United States v. Jarvis,* 7 F.3d 404, 409–10 (4th Cir.1993), *cert. denied,* 510 U.S. 1169, 114 S.Ct. 1200, 127 L.Ed.2d 549 (1994); *United States v. Rivera,* 872 F.2d 507, 509 (1st Cir.), *cert. denied,* 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989). Absent evidence of a voluntary and intelligent choice by Allen, we agree with the rationale of these decisions and conclude that Allen's failure to object constituted a forfeiture of his claim. Accordingly, we review his jeopardy claim for plain error.[3]

## B.

The double jeopardy clause protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *overruled on other grounds,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *United States v. Salinas,* 65 F.3d 551, 552 (6th Cir.1995). The Supreme Court has held that a "civil" penalty can constitute punishment for double jeopardy purposes to the extent that the penalty is properly characterized as a deterrent or retribution, and is far more than remedial. *See United States v. Halper,* 490 U.S. 435, 448–49, 109 S.Ct. 1892, 1901–02, 104 L.Ed.2d 487 (1989). Allen's criminal prosecution clearly subjected him to punishment for purposes of double jeopardy. "Therefore, if the prior civil forfeiture proceeding, which was predicated on the same drug offense as charged in the indictment, constituted punishment, the Double Jeopardy Clause will bar the pending prosecution." *Salinas,* 65 F.3d at 552 (citation omitted).

■■ Key to our analysis is whether the administrative forfeiture of Allen's unclaimed property triggered the double jeopardy clause. We begin by noting that in pursuit of his administrative remedy, Allen only filed a petition for remission, and neglected to file

---

**2.** Rule 52(b) provides:
 (b) PLAIN ERROR. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

**3.** Plain error analysis is controlled by Rule 52 of the Federal Rules of Criminal Procedure. We recognize that Rule 52 "leaves the decision to correct the forfeited error within the sound discretion of the Court of Appeals, and the court

should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano,* 507 U.S. at 732, 113 S.Ct. at 1776 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). Furthermore, despite the disjunctive language of Rule 52(b), this Court may correct the error only if it is both "plain" and "affect[s] substantial rights." *Id.*

a claim of ownership and bond as directed by 19 U.S.C. § 1608. The Seventh, Ninth and Tenth Circuits have all held that the filing of a petition for remission does not serve to contest the forfeiture, *see United States v. German*, 76 F.3d 315, 320 (10th Cir.1996); *United States v. Vega*, 72 F.3d 507, 514 (7th Cir.1995) (citing *United States v. Ruth*, 65 F.3d 599, 604 n. 2 (7th Cir.1995)), *cert. denied*, —— U.S. ——, 116 S.Ct. 2529, 135 L.Ed.2d 1053 (1996); and *United States v. Wong*, 62 F.3d 1212, 1214 (9th Cir.1995), but rather is in the nature of a request for a pardon. *See Vega*, 72 F.3d at 514 (citing *Ruth*, 65 F.3d at 604 n. 2); *see also Wong*, 62 F.3d at 1214.[4] We agree with these circuits, follow the specific mandate of 19 U.S.C. § 1608, and conclude that the filing of a petition for remission is insufficient to contest an administrative forfeiture.

▮ The question then arises whether jeopardy attached in light of the uncontested forfeiture proceeding with regard to Allen's property. Although we have not directly addressed this issue,[5] those circuit courts that have examined the question have unanimously concluded that jeopardy does not attach for purposes of double jeopardy. *See, e.g., United States v. Idowu*, 74 F.3d 387, 394–96 (2d Cir.) (concluding that if no judicial administrative forfeiture proceedings are instituted then no jeopardy attaches), *cert. denied*, —— U.S. ——, 116 S.Ct. 1888, 135 L.Ed.2d 182 (1996); *United States v. Buchanan*, 70 F.3d 818, 830 n. 12 (5th Cir.1995) (noting that non-party defendant to forfeiture proceeding is not placed in jeopardy for purposes of double jeopardy analysis), *cert. denied*, —— U.S. ——, 116 S.Ct. 1340, 134 L.Ed.2d 490 (1996); *United States v. Baird*, 63 F.3d 1213, 1217–19 (3d Cir.1995) (explaining that jeopardy cannot attach until one is

made a party to a proceeding before a trier of fact with jurisdiction to try question of innocence or guilt), *cert. denied*, —— U.S. ——, 116 S.Ct. 909, 133 L.Ed.2d 841 (1996); *United States v. Cretacci*, 62 F.3d 307, 310–11 (9th Cir.1995) (establishing that an administrative forfeiture of unclaimed property simply constitutes the taking of abandoned property so as not to implicate jeopardy clause), *cert. denied*, —— U.S. ——, 116 S.Ct. 2528, 135 L.Ed.2d 1052 (1996); *United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir.) (explaining that jeopardy did not attach where the property was forfeited without opposition, thus defendant was not a party to the forfeiture), *cert. denied*, —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994). As the Third Circuit in *Baird* reasoned:

> Because Baird failed to contest the forfeiture, he never became a party to any judicial proceeding, criminal or civil. In fact, no judicial proceeding occurred prior to the forfeiture of the money—such being the very nature of administrative forfeiture. Baird has therefore yet to have been placed in jeopardy, or at risk, of a determination of "guilt" and the concomitant imposition of "punishment." . . . . [A]s a non-party to the administrative forfeiture process, Baird was not, and *could not* have been, placed at risk by the process. And without having been placed at risk of a determination of guilt, jeopardy did not attach as a consequence of the administrative forfeiture.

*Baird*, 63 F.3d at 1219 (emphasis added). We find this analysis persuasive, and join these circuits by concluding that because Allen failed to contest the administrative forfeiture he was not a party to the proceeding, and thus jeopardy did not attach.[6] Accord-

---

4. Here, the *Wong* court noted: "The remission or mitigation process under § 1618 is not a formal proceeding seeking to punish the petitioner. It is an administrative prelude to the formal forfeiture proceeding, wherein a valid forfeiture is presumed, and the petitioner is permitted to ask for leniency." *See* 28 C.F.R. § 9.5; *United States v. Von Neumann*, 474 U.S. 242, 250, 106 S.Ct. 610, 615, 88 L.Ed.2d 587 (1986) ("The remission statute simply grants the Secretary the discretion not to pursue a complete forfeiture, despite the government's entitlement to one."). Such a preliminary administrative step, which precedes the fil-

ing of a civil forfeiture proceeding, does not create jeopardy.

5. The issue was presented in *Salinas*, but the court opted to rule on other grounds. *Salinas*, 65 F.3d at 552–53.

6. Even if we were to assume that jeopardy did attach to the civil forfeiture proceedings, it did not attach until a final notice of forfeiture was received, which in Allen's case, occurred after his criminal conviction. Thus, if any conviction were to be vacated based on double jeopardy, it

ingly, we find no plain error and reject Allen's double jeopardy claim.

## IV.

With regard to Allen's sentence, the government cross-appeals the district court's use of amended Application Note 2 (Amendment 506) to U.S.S.G. § 4B1.1, which precludes the consideration of statutory enhancements in determining offense levels for those categorized as career offenders. The government claims that the Sentencing Commission exceeded its authority in enacting the amendment based upon the assertion that the amendment conflicts with the statutory mandate of 28 U.S.C. § 994(h). As previously noted, the government's cross appeal presents a case of first impression in this Circuit.

## A.

Prior to Allen's sentencing, and pursuant to 21 U.S.C. § 851(a)(1), the government filed a notice of its intent to seek the enhanced penalty applicable to repeat drug offenders set forth in § 841(b)(1)(D), based upon Allen's three prior felony convictions for drug trafficking. Applicable to Allen's sentence was § 4B1.1 of the Guidelines which provides a method for determining the guideline sentencing range for career offenders. The sentencing range under this provision is calculated with reference to a table that provides an offense level for a given "Offense Statutory Maximum," which is determined by the statute under which the defendant is convicted. In Allen's case, Section 841(b)(1)(D) provides a five-year term of imprisonment for first-time violators of 21 U.S.C. § 846. In addition, 841(b)(1)(D) authorizes a sentence enhancement of up to 10 years of imprisonment for any person previously convicted of a felony drug offense. 21 U.S.C. § 841(b)(1)(D).

In the 1993 Guidelines, and prior to Allen's conviction, application note 2 to § 4B1.1 defined the term "Offense Statutory Maximum"

as "the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense...." U.S.S.G. § 4B1.1, comment. (n. 2) (1993). Courts addressing this definition in determining the applicable offense level under § 4B1.1 for repeat offenders uniformly held that "Offense Statutory Maximum" referred to the enhanced statutory maximum. *See United States v. Sanchez,* 988 F.2d 1384, 1394–97 (5th Cir.), *cert. denied,* 510 U.S. 878, 114 S.Ct. 217, 126 L.Ed.2d 173 (1993); *United States v. Smith,* 984 F.2d 1084, 1086–87 (10th Cir.), *cert. denied,* 510 U.S. 873, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *United States v. Moralez,* 964 F.2d 677, 682–83 (7th Cir.), *cert. denied,* 506 U.S. 903, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992); *United States v. Garrett,* 959 F.2d 1005, 1009–11 (D.C.Cir. 1992); *United States v. Amis,* 926 F.2d 328, 329–30 (3d Cir.1991); *United States v. Sanchez–Lopez,* 879 F.2d 541, 558–60 (9th Cir. 1989). Under this construction, use of the enhanced figure in Allen's case would result in an offense level of 24, producing a sentencing range of between 100–125 months.[7]

On November 1, 1994, the Sentencing Commission amended Application Note 2 to U.S.S.G. § 4B1.1 and redefined the term "Offense Statutory Maximum." Note 2 of § 4B1.1 now states:

"Offense Statutory Maximum,"... refers to the maximum term of imprisonment authorized for the offense of conviction that is a crime of violence or controlled substance offense, not including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record (such sentencing enhancement provisions are contained, for example, in 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), (b)(1)(C), and (b)(1)(D)). For example, where the statutory maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C) is increased from twenty years to thirty years because the defendant has one or more qualifying

would be the civil forfeiture and not Allen's conviction. *See Idowu,* 74 F.3d at 396 (concluding that if jeopardy attached at all, it attached when the administrative declaration of forfeiture was issued).

7. In calculating the sentencing guideline range pursuant to U.S.S.G. § 4B1.1, sentencing courts are instructed that "[a] career offender's criminal history category in every case shall be Category VI." U.S.S.G. § 4B1.1.

prior drug convictions, the "Offense Statutory Maximum" for the purposes of this guideline is twenty years and not thirty years. If more than one count of conviction is of a crime of violence or controlled substance offense, use the maximum authorized term of imprisonment for the count that authorizes the greatest maximum term of imprisonment.

To summarize, Note 2 provides that the sentencing court shall ignore the enhanced statutory penalty provisions for repeat offenders, and in all cases, calculate the base offense level by using the unenhanced maximum statutory penalty for first-time offenders. In promulgating Amendment 506, the Sentencing Commission explained that such modification was necessary so as to avoid "unwarranted double-counting as well as unwarranted disparity associated with variations in the exercise of prosecutorial discretion in seeking enhanced penalties based on prior convictions." U.S.S.G.App. C, Amend. 506 (Nov. 1, 1994). Relying upon Amendment 506, and notwithstanding the government's objection, the district court sentenced Allen using the unenhanced maximum statutory penalty of five years. Accordingly, based upon the probation officer's report, the district court determined Allen's career offender base offense level at 18 and sentenced him between the corresponding guideline range of 57-71 to a 60 month term of imprisonment.

The government contends that Amendment 506 to Application Note 2 is outside the Sentencing Commission's delegated authority to promulgate because it squarely contravenes a Congressional directive in the Guidelines' enabling legislation. *See* 28 U.S.C. §§ 991-998. At issue in this case is section 994(h) which requires that:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—
>
> (1) has been convicted of a felony that is—
>> (A) a crime of violence; or
>> (B) an offense described in [21 U.S.C. § 841] and

> (2) has previously been convicted of two or more felonies, each of which is—
>> (A) a crime of violence; or
>> (B) an offense described in [21 U.S.C. § 841] . . .

28 U.S.C. § 994(h). According to the government, § 994(h) clearly expresses Congress' intention that, for adult offenders who have two or more prior convictions for drug or violent crimes, the guideline range that the Sentencing Commission promulgates must be "at or near the maximum term authorized" by the applicable statute. More importantly, the phrase "maximum term authorized" refers to the enhanced statutory maximum and not the unenhanced maximum. The government contends that as a result of Amendment 506 the Commission has deleted this mandate from section 994(h), an act which exceeds its authority. Thus, to be consistent with both 28 U.S.C. § 994(h) and 21 U.S.C. § 841(b)(1)(D), the guideline range for Allen's case should be "at or near" the statutory maximum of ten years, or 120 months in prison.

### B.

■ "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States,* 508 U.S. 36, 37–39, 113 S.Ct. 1913, 1914–16, 123 L.Ed.2d 598 (1993). Accordingly, our deference to the Commission's commentary ceases once we find that such commentary, and the interpretation therein, contravenes federal law. *See Neal v. United States,* —— U.S. ——, ——, ——, 116 S.Ct. 763, 766, 768, 133 L.Ed.2d 709 (1996). For the reasons that follow, we hold that Amendment 506 is inconsistent with the Congressional mandate of section 994(h), and accordingly REVERSE Allen's sentencing and REMAND for sentencing without regard to Amendment 506 to Application Note 2.

### C.

We note that there is a three to two split among the circuit courts on the validity of

the amendment. The Seventh, Eighth, and Tenth Circuits have all held that the Sentencing Commission exceeded its authority in enacting Amendment 506 and construing "Offense Statutory Maximum" as the unenhanced penalty for repeat offenders, *see United States v. Hernandez*, 79 F.3d 584, 595 (7th Cir.1996), *petition for cert. filed*, 64 U.S.L.W. 2627 (U.S. Apr. 1, 1996) (No. 95–8469), *United States v. Fountain*, 83 F.3d 946, 950–51 (8th Cir.1996), and *United States v. Novey*, 78 F.3d 1483, 1487 (10th Cir.1996), *petition for cert. filed*, 64 U.S.L.W. 2627 (U.S. Apr. 29, 1996) (No. 95–8791), while the First and Ninth Circuits have concluded that Amendment 506 accurately carries out the intention as directed by Congress in 28 U.S.C. § 994(h). *See United States v. LaBonte*, 70 F.3d 1396 (1st Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 2545, 135 L.Ed.2d 1066 (1996); and *United States v. Dunn*, 80 F.3d 402, 405 (9th Cir.1996). *But see LaBonte*, 70 F.3d at 1414–20 (Stahl, J., concurring in part and dissenting in part) and *Dunn*, 80 F.3d at 405 (Raymer, J., dissenting). Our task in resolving the dispute before us is to interpret the language of Amendment 506. As stated in *Novey*, the validity of Amendment 506 depends on whether the phrase "maximum term authorized" of § 994(h) can plausibly be construed to mean either the "maximum enhanced term authorized" or the "maximum unenhanced term authorized." *Novey*, 78 F.3d at 1487. We join the Seventh, Eighth, and Tenth Circuits in concluding that it cannot.

■■■ When interpreting statutory language, we look at both the specific statutory language and the language and design of the statute as a whole. *See United States v. Meyers*, 952 F.2d 914, 918 (6th Cir.) (citing *Sullivan v. Everhart*, 494 U.S. 83, 110 S.Ct. 960, 108 L.Ed.2d 72 (1990)), *cert. denied*, 503 U.S. 994, 112 S.Ct. 1695, 118 L.Ed.2d 407 (1992). Here, the plain language of § 994(h) dictates that "maximum term authorized" refers to the enhanced statutory maximum. Following "maximum term authorized" in the statute is the phrase "for categories of defendants in which the defendant is eighteen years old or older and [has been convicted of a crime of violence or specified drug offense and has two such prior convictions]." Ac-

cordingly, this phrase defines or modifies "maximum term authorized" and thus clearly and unambiguously directs the Commission to use the enhanced statutory maximum in promulgating the sentencing guidelines for repeat offenders. *See Novey*, 78 F.3d at 1487 ("Because the 'maximum term authorized' for categories of defendants in which the defendant has two prior qualifying felony convictions is necessarily the enhanced statutory maximum, we find no ambiguity in the statute."); *Fountain*, 83 F.3d at 952 ("Because the 'maximum term authorized' for categories of recidivist defendants is necessarily the enhanced statutory maximum, there is no ambiguity in the statute."); *Hernandez*, 79 F.3d at 596 ("nothing on the face of section 994(h) reveals 'categories' to be a term either of critical significance or of opaque ambiguity."). *See also LaBonte*, 70 F.3d at 1414 (Stahl, J., concurring in part and dissenting in part) ("I think it clear that the sentencing scheme propounded by Amendment 506 does not satisfy Congress's clear command to sentence career offenders at or near that maximum."). This interpretation is consistent with the case law prior to the amendment, which universally held that using the enhanced penalty as the "Offense Statutory Maximum" in determining a career offender's offense level carried out Congress' intent that drug offenders receive sentences at or near the statutory maximum. *See* cases cited *supra* part IV.A.

Furthermore, as correctly stated by Judge Stahl in *LaBonte*, the Commission's interpretation of § 994(h) is "inherently implausible because it effectively nullifies the criminal history enhancements carefully enacted in statutes like 21 U.S.C. § 841." *Id.* at 1415 (Stahl, J., concurring in part and dissenting in part); *see also Novey*, 78 F.3d at 1488 (same). In this case, 21 U.S.C. § 841 provides a five year maximum for first-time violators of that statute, and enhances that maximum to ten years for defendants with one or more prior drug convictions. Use of the unenhanced maximum as suggested by the Commission provides a sentencing range of 57–71 months, while use of the enhanced statutory maximum authorizes a sentencing range of 100–125 months. Although the lat-

ter range clearly authorizes the 10–year enhancement as provided in 21 U.S.C. § 841(b)(1)(D), the unenhanced range only permits a maximum imprisonment term of approximately six years. Consequently, applying Amendment 506, while ignoring the enhanced statutory maximum penalty for recidivists, is contrary to the plain language of § 994 and effectively negates the enhancement required by 21 U.S.C. § 841(b)(1)(D). "Such an interpretation reduces both section 994(h) and the penalty enhancing components of statutes such as section 841 to mere surplusage." *Fountain*, 83 F.3d at 953. Nevertheless, the First and Ninth Circuits have come to a different conclusion. According to the First Circuit in *LaBonte*, what constitutes "categories of defendants" is plausibly susceptible to two different definitions. The court noted that one possible reading is that "categories" are composed of those defendants against whom prosecutors have filed notices of intention to seek sentence enhancements. *LaBonte*, 70 F.3d at 1405. Under this definition, the applicable statutory maximum would be the enhanced statutory maximum. *Id.* However, "this reading is not linguistically compelled," because the "categories" can also be plausibly defined more broadly to include all defendants regardless of whether the prosecution elects to invoke the sentence enhancement. *Id.* In this instance, reasoned the majority,

the word "maximum" refers to the unenhanced maximum since this represents the highest sentencing range relevant to all defendants in that category.[8] *Id.* The Ninth Circuit has agreed. *Dunn*, 80 F.3d at 404 (finding the view of the majority in *LaBonte* more persuasive than Judge Stahl's dissent).[9]

It is clear that a primary goal of federal sentencing reform was "the elimination of unwarranted sentencing disparity." S.Rep. No. 225, 98th Cong., 2d Sess. 52, reprinted in 1984 U.S.S.C.A.N. 382, 3235. In fact, Congress has instructed the Commission in establishing its sentencing policies to "avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct...." 28 U.S.C. § 991(b)(1)(B). However, while Congress was clearly concerned with the unfettered discretion of sentencing judges and parole authorities, there is, unfortunately, no evidence suggesting that Congress was intent on curbing the discretion of prosecutors.[10] *See Novey*, 78 F.3d at 1490 ("These disparities ... can be traced directly to the unfettered discretion the law confers on those judges and parole authorities responsible for imposing and implementing the sentence.") (quoting S.Rep. No. 225 at 37, 1984 U.S.S.C.A.N. at 3221). As we noted in *United States v. Draper*, 888 F.2d 1100 (6th Cir. 1989), 28 U.S.C. § 994 "established a new

---

8. Remarkably, the *LaBonte* Court also rests its decision on the imprecision of the phrase "at or near" as found in § 994(h). Because the court was unable to extract Congress' clear intent in promulgating this phrase, the court concluded it was appropriate to defer to the Commission's interpretation. *LaBonte*, 70 F.3d at 1409–10. Nonetheless, the dissent found "at or near" to be a fairly unambiguous term, meaning "close to" or "not a far distance from." *Id.* at 1417–18 (Stahl, J., concurring in part and dissenting in part). Furthermore, sentences calculated by using the unenhanced maximum as suggested by the Commission will fall well below the enhanced maximum as intended by Congress. *Id.* at 1418. Although we agree that "at or near" is a clear and unambiguous term, we find that the interpretation of that phrase has little effect on our decision. The Eighth Circuit in *Fountain* stated it best when it established that "[t]he issue here is not how close the sentence must be to the statutory maximum, but to which statutory maximum it must be close ....the definition of 'near' does not realistically affect the dispute." *Fountain*, 83 F.3d at 952–53.

9. Recall that prior to Amendment 506, the Ninth Circuit interpreted the "Offense Statutory Maximum" to mean the enhanced maximum under the applicable statute. *United States v. Sanchez-Lopez*, 879 F.2d 541, 559–60 (9th Cir.1989). According to the court, failure to apply the repeat offender provision in this way would thwart Congress' intent for repeat drug offenders to be sentenced near the maximum authorized by statute. *Id.* at 559. In *Dunn*, the Ninth Circuit reversed its interpretation without mention of its previous position.

10. Importantly, "Congress actually acquiesced in the transfer of discretion to prosecutors. When Congress enacted these provisions, it was aware that the 'maximum term authorized' will vary depending on whether a prosecutor seeks an enhanced sentence." *Fountain*, 83 F.3d at 953; *Novey*, 78 F.3d 1483, 1490–91. 21 U.S.C. § 851(a)(1).

framework within which federal judges must exercise very limited discretion when determining sentences," and promulgation of this enabling statute "reduced a large measure of the discretion previously left to trial judges in determining sentences within statutory maximum terms." *Id.* at 1104. Even the majority in *LaBonte* recognized that "Congress did not create the Sentencing Commission with an eye toward eradicating prosecutorial abuses...." *LaBonte*, 70 F.3d at 1408. We are therefore confused by the approach taken by the First Circuit in defining the phrase "categories of defendants" with regard to the intent of prosecutors in seeking enhancements. Neither the legislative history nor the enabling statutes themselves speak to the problem of prosecutorial discretion. While the First Circuit's definition of "categories of defendants" might be a possible interpretation, it is certainly not a plausible one in light of Congressional intent. *Hernandez*, 79 F.3d at 596 ("[W]e are unpersuaded that prosecutorial discretion in the application of enhanced statutory penalties is sufficient to create an ambiguity as to what Congress may have intended 'categories' to signify.").

For the same reasons, we are at odds with the Commission's justification in promulgating Amendment 506. The Commission explained that the amendment "avoids . . . unwarranted disparity associated with variations in the exercise of prosecutorial discretion in seeking enhanced penalties based on prior convictions." U.S.S.G., App. C, Amend. 506, at 411 (Nov. 1995). Nevertheless, the courts should refrain from interpreting § 994(h) as a Congressional tool for alleviating the disparities created by prosecutorial discretion. Instead, this issue is best directed towards Congress in regard to 21 U.S.C. § 851(a)(1),[11] which created prosecutorial discretion.[12] *See Novey*, 78 F.3d at 1491 ("The disparities decried by proponents of Amendment 506 based on prosecutorial discretion should be addressed to Congress in connection with 21 U.S.C. 851(a)(1) rather than utilized by the courts to give an artificial, and inconsistent, interpretation to 28 U.S.C. 994(h).").

We also reject the Commission's argument that the amendment is a means to avoid unwarranted double-counting. U.S.S.G.App. C, Amend. 506, at 411 (Nov. 1, 1995). This double-counting argument rests on the premise that a defendant's prior convictions will enhance his sentence twice—once to increase the Offense Statutory Maximum and again to enhance his offense level and criminal history category under the Guidelines. In addressing this issue, courts have uniformly concluded that no double enhancement of penalties exists. *See United States v. Smith*, 984 F.2d 1084, 1086–87 (10th Cir.), *cert. denied*, 510 U.S. 873, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *United States v. Moralez*, 964 F.2d 677, 682–83 (7th Cir.), *cert. denied*, 506 U.S. 903, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992); *United States v. Garrett*, 959 F.2d 1005, 1010 (D.C.Cir.1992); *United States v. Amis*, 926 F.2d 328, 330 (3d Cir.1991); *United States v. Sanchez–Lopez*, 879 F.2d 541, 558–60 (9th Cir.1989). In *United States v. Sanchez–Lopez*, the Ninth Circuit held that application of the enhanced statutory maximum for a defendant with a prior drug conviction under subsection 841(b)(1) to the career offender provision does not result in double enhancement of his sentence. The court observed:

The Sentencing Guidelines are intended to provide a narrow sentence range within the range authorized by the statute for the offense of conviction.... [Consequently], [t]he method the Sentencing Commission

---

**11.** Section 851(a)(1) provides in relevant part:
No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court [] stating in writing the previous convictions to be relied upon.

**12.** The Sixth Circuit has held that the requirements of § 851(a)(1) apply only to statutory sentence enhancements, not sentence enhancements under § 4B1.1 of the Sentencing Guidelines. *See, e.g., United States v. Mans*, 999 F.2d 966, 969 (6th Cir.), *cert. denied*, 510 U.S. 999, 114 S.Ct. 567, 126 L.Ed.2d 467 (1993); *United States v. Roberts*, 986 F.2d 1026, 1033 (6th Cir.), *cert. denied*, 510 U.S. 900, 114 S.Ct. 271, 126 L.Ed.2d 222 (1993); *United States v. Meyers*, 952 F.2d 914, 919 (6th Cir.), *cert. denied*, 503 U.S. 994, 112 S.Ct. 1695, 118 L.Ed.2d 407 (1992).

use[s] to calculate the sentence under the career offender provision is of no consequence ... where the sentence is sanctioned by Congress by statute.

Congress made it very clear that the Sentencing Commission should ensure that [repeat drug offenders] should receive a sentence of imprisonment under the guidelines that is at or near the maximum term authorized by statute.... The career offender provision, section 4B1.1, implements Congress' mandate.

*Sanchez-Lopez,* 879 F.2d at 559 (citations omitted). We agree with this conclusion and specifically reject the argument that imposition of the enhanced statutory maximum would result in double counting for purposes of a defendant's sentence.

Despite the Commission's concerns about prosecutorial discretion or unwarranted double counting, we cannot ignore the plain and clear language of section 994(h). The Congressional mandate of section 994(h) is unambiguous and requires the Commission to assure that the Guidelines specify a sentence of imprisonment "at or near the maximum term authorized," which in this case is the enhanced penalty. Here, Congress' specific instruction in section 994(h) must override the Commission's more general concerns for consistency and the problem of multiple punishments. *Hernandez,* 79 F.3d at 601 ("[W]e believe that the specific and unequivocal command that career offenders be sentenced 'at or near the maximum term authorized' trumps the more general concern for consistency in overall sentences.").

### D.

We hold that the Commission's amendment to the commentary accompanying § 4B1.1 of the sentencing guidelines is inconsistent with the mandate of 28 U.S.C. § 994(h) to punish recidivists "at or near the maximum term authorized," and therefore is invalid. As stated by both the Eighth and Tenth Circuits, however, we do so with reluctance. *Novey,* 78 F.3d at 1491 ("Although we believe the statute is clear and unambiguous, it is with reluctance that we find Amendment 506 invalid."); *Fountain,* 83 F.3d at 953 ("Although we find the statute is clear and

unambiguous, we share the Tenth Circuit's diffidence in invalidating Amendment 506.") (citation omitted). These circuits have recognized that "the Commission's attempt to ameliorate the severity of the guidelines' treatment of recidivist drug offenders comports with a widespread belief that the guidelines system is unreasonably draconian in many cases and deprives judges of the discretion to consider mitigating circumstances." *Fountain,* 83 F.3d at 953 (citing *Novey,* 78 F.3d at 1491). Nevertheless, we are cognizant that only Congress has the authority to revise its statutes, a responsibility which neither the courts nor the Sentencing Commission can exercise. Allen's sentence is vacated and this case is remanded to the district court for resentencing in accordance with this opinion.

### V.

Defendants raise nine other issues on appeal. We deal with each in the order in which they arose during the proceedings at the district court.

### A.

Allen accuses the government of prosecutorial vindictiveness. Allen maintains that the prosecutor filed the superseding indictment in retaliation for Allen's earlier motion to dismiss. As to the original indictment, Allen had argued that the government failed to allege an overt act in support of the attempt count. The district court denied Allen's motion concluding that an overt act need not be charged. Thereafter, the government sought a superseding indictment adding an additional count of conspiracy and listing two overt acts in support of the conspiracy count.

■ A prosecutor vindictively prosecutes when he acts to deter the person prosecuted from exercising a protected right. *United States v. Anderson,* 923 F.2d 450, 453 (6th Cir.1991) (citing *United States v. Andrews,* 633 F.2d 449, 453–55 (6th Cir.1980), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981)), *cert. denied,* 499 U.S. 980, 111 S.Ct. 1633, 113 L.Ed.2d 729 (1991). To prove vindictive prosecution, the defen-

dant must demonstrate that the prosecutor has some "stake" in deterring the defendant's exercise of constitutional rights, and that the prosecutor's conduct was somehow unreasonable. *Id.*

Relevant to Allen's challenge is the Supreme Court's decision in *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), in which the Court addressed the issue of prosecutorial vindictiveness in the pretrial context. In *Goodwin,* the Court rejected the defendant's argument that his indictment on a felony charge following his request for a jury trial on pending misdemeanor charges gave rise to a presumption of vindictiveness. *Id.* at 384, 102 S.Ct. at 2494. The Court noted that, in the pretrial context, reindictment on a more serious charge does not present the same appearance of prosecutorial vindictiveness that arises when a prosecutor reindicts a defendant who has successfully exercised the right to obtain a new trial on a previously litigated issue. *Id.* at 381, 102 S.Ct. at 2492. The Court explained that because defendants regularly invoke procedural rights before trial that impose some burden on a prosecutor, including challenges to the sufficiency of the indictment, it is unrealistic to presume that a prosecutor's response to a pretrial motion is an effort to penalize or deter the defendant. *Id.* In addition, at the pretrial stage of the proceedings, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Id.*

In this case, the government's conduct was well-within the parameters set forth in *Goodwin.* Accordingly, we hold that Allen has failed to establish prosecutorial vindictiveness.

### B.

Prior to trial, Branham and Allen moved to compel the government to play all of the audiotapes regarding conversations between Cordle, Branham and Spencer in chronological order during its case-in-chief. The district court denied their motion, but specifically granted the defendants the authority to introduce and to play any and all taped conversations not played by the government. The defendants now claim that the court erred in denying that motion. They claim that the playing of all tape recorded conversations in a sequential and chronological order was necessary to present a fair and impartial understanding of their respective roles in the attempted drug transaction. Specifically, Branham argues that it was crucial to his entrapment defense for the jury to understand the seven months preceding his arrest. Branham and Allen rely upon Federal Rule of Evidence 106 which states:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Fed.R.Evid. 106.

We review a trial court's decision regarding the admissibility of testimony and other evidence, including audiotapes, for an abuse of discretion. *United States v. Bonds,* 12 F.3d 540, 554 (6th Cir.1993). In this instance, the defendants had the opportunity to introduce the remaining tape recordings during the presentation of their evidence. Although they chose not to take advantage of that opportunity, the defendants could have developed the record to indicate the magnitude of their roles in the transaction or to demonstrate an entrapment defense. Any prejudicial effect by the court's exclusion was neutralized by this fact. Accordingly, we cannot conclude that the district court abused its discretion in denying defendants' motion.

### C.

Next, Branham challenges the district court's exclusion of his testimony that Cordle attempted to get Branham involved in a number of illegal activities. The district court sustained as hearsay the government's objection to counsel's general inquiry concerning conversations between Branham and Cordle. Branham argues that the testimony was relevant to his entrapment defense and admissible nonhearsay under Fed.R.Evid.

801(d)(2)(D) [13] because Cordle, as a paid government informant, was in essence a party opponent. A court's decision regarding whether evidence constitutes hearsay within the meaning of the Federal Rules of Evidence is a question of law which we review *de novo.* *Hancock v. Dodson,* 958 F.2d 1367, 1371 (6th Cir.1992).

The government concedes that Rule 801(d)(2)(D) contemplates that the federal government is a party-opponent of the defendant in a criminal case, *see United States v. Morgan,* 581 F.2d 933, 937 n. 10 (D.C.Cir. 1978), but argues, nonetheless, that the conversations at issue were not within the scope of the agency between Cordle and the government. We disagree. Arguably, Cordle conversed with Branham on a regular basis in order to establish a trusting relationship. Whatever Cordle said during these conversations was in furtherance of that goal, and thus within the scope of the existing agency.

Furthermore, conversations concerning Branham's entrapment defense would not constitute hearsay. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). However, "if the significance of a statement 'lies solely in the fact that it was made,' rather than in the veracity of the out-of-court declarant's assertion, the statement is not hearsay because it is not offered to prove the truth of the matter asserted." *United States v. Cantu,* 876 F.2d 1134, 1137 (5th Cir.1989) (quoting *United States v. Bobo,* 586 F.2d 355 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979)). Here, defense counsel was attempting to offer the parties' conversations as evidence of Branham's state of mind in support of his entrapment defense. Accordingly, the truth of the conversations would be irrelevant for purposes of the defense, because the conversations' significance would

exist solely by the fact that they were made. *Id.*

Nevertheless, even if the district court erred in sustaining the hearsay objection, we will not reverse if the error was harmless. *United States v. Wiedyk,* 71 F.3d 602, 607 (6th Cir.1995). In determining whether the error prejudiced the defendant, we examine the entire record. *Id.*; *see also* Fed.R.Crim.P. 52(a). In this case, the record proves that the error was harmless. Immediately after the district court sustained the hearsay objection, Branham was asked the following questions:

Q. Did your conversations with [Cordle] ever turn towards any illegal activities?

A. No sir.

Q. Were illegal activities mentioned by either of you?

A. Not actually....

\*　　\*　　\*　　\*　　\*　　\*

Q. Did the subject of marijuana ever come up between you and [Cordle]?

A. Yes sir.

Q. And did you say anything to [Cordle] about marijuana?

A. No, sir, he brought it up.

This testimony went directly to Branham's entrapment defense and clearly negated any prejudice that may have arisen from the sustained hearsay objection. Because the district court's ruling constituted harmless error, reversal is not warranted.

### D.

Branham also complains that the district court clearly erred in enhancing his sentence for obstruction of justice because the court failed to make a specific finding of perjury. A sentencing judge may make a two-point enhancement to a defendant's offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or

---

**13.** Fed.R.Evid. 801(d)(2)(D) provides, in relevant part:

A statement is not hearsay if—
(2) Admission by party-opponent—

The statement is offered against a party and is ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship....

sentencing of the instant offense...." U.S.S.G. § 3C1.1. Perjury is included as an example of obstruction of justice. U.S.S.G. § 3C1.1, comment. (n. 3(b)).

At Branham's sentencing hearing, the prosecution made the following statement in support of enhancement for obstruction of justice:

> Now, had Mr. Branham chosen to take the stand and stayed with his story as far as he was involved and not gone a step further and perjured himself to try to exculpate the other two co-defendants in this case, then he would have probably not have crossed the line and been responsible for that two-level enhancement. But in this case, he clearly perjured himself.... [T]o sit there and to tell this jury a bold-faced lie that they were not involved in it, that they just showed up and they were all there just to buy cars, is a total, total lie to the jury.

Thereafter, the district court made the following finding:

> Well, the jury has already made its finding. Now I'm going to make my finding. This is my decision to make. And I have reviewed my notes of the trial, and I would agree with [the prosecution] that up until the very last part of your client's testimony, he was all right. But then he went on to indicate that [Allen and Reynolds] didn't know what was going on. I find that unbelievable. I believe he perjured himself there, and I so find.

Branham argues that the district court's findings are not specific enough. We have held that when enhancing for obstruction of justice, a district court should "identify specifically which statements or actions by a defendant constitute an obstruction of justice." *United States v. Clark,* 982 F.2d 965, 970 (6th Cir.1993). While the better practice is to explicitly reference the defendant's untruthful statements, *see id.,* as the reviewing court, we are satisfied if the district court identifies the testimony the court finds perjurious by reference to its context. *Id.; see also United States v. Ledezma,* 26 F.3d 636, 644–45 (6th Cir.), *cert. denied,* ―― U.S. ――, 115 S.Ct. 349, 130 L.Ed.2d 305 (1994). In the instant case, although the district court

did not identify specific testimony as perjurious, the colloquy between the court and prosecution established a context from which we can determine which statements it found to be untruthful. Accordingly, we hold that the district court clearly identified the specific instance of perjurious testimony, and affirm the enhancement of Branham's sentence for obstruction of justice.

### E.

 Next, Allen contends that the district court erred in denying his motion to dismiss all charges against him on the basis of outrageous government conduct. At trial, Spencer testified that the government paid Cordle a contingency fee of 20% as to any assets seized following an arrest of the defendants. The district court denied Allen's motion to dismiss the charges based on that conduct. Allen maintains that this governmental conduct created a perverse incentive for Cordle to fabricate evidence and distort the truth. According to Allen, such conduct is so outrageous as to violate his due process rights. Allen asks us to adopt the holding and rationale of *United States v. Solorio,* 37 F.3d 454 (9th Cir.1994), *withdrawn,* 43 F.3d 1334 (9th Cir.1995), in which the Ninth Circuit acknowledged the viability of this "due process" defense, and found it applicable to the facts in that case, where the informant received a monetary percentage of any drug proceeds associated with the defendant's arrest.

Despite the decision in *Solorio,* we are bound by this Circuit's decision in *United States v. Tucker,* 28 F.3d 1420 (6th Cir.1994), *cert. denied,* ―― U.S. ――, 115 S.Ct. 1426, 131 L.Ed.2d 308 (1995), which rejected the "due process" defense sounding in inducement. *Tucker* emphasized that such a claim is nothing more than a claim of entrapment, and may not be circumvented by couching the defense in terms of due process. *Id.* at 1428. *See also United States v. Mack,* 53 F.3d 126, 128 (6th Cir.) (rejecting defendant's due process defense to a felon in possession prosecution where the informant allegedly requested that defendant bring a gun to a prearranged meeting), *cert. denied,* ―― U.S. ――, 116 S.Ct. 153, 133 L.Ed.2d 97 (1995).

As to Allen's predisposition, he has not offered any proof that he was not so inclined to commit the crimes as charged. Consequently, we hold that the district court properly denied Allen's motion to dismiss.

### F.

■ Allen also argues that the district court erred in allowing Spencer to summarize the content of the tape recordings, claiming that the tapes were the best evidence of the conversations which took place. During his testimony, Spencer's attention was drawn to the videotape of the last meeting between the officers and defendants. The prosecution acknowledged that a portion of the tape was inaudible and asked Spencer if he could tell the jury what took place at that time. Thereafter, defense counsel objected to the admission of Spencer's summary, contending that the tapes were the best evidence of what was said, and that the jury should hear that they were inaudible, and not Spencer's summary. The district court overruled the objection, stating that the jury knew that that part of the tape was inaudible, and that defense counsel would simply have to cross-examine Spencer. Again, we review a district court's evidentiary rulings under an abuse of discretion standard. *United States v. Levy,* 904 F.2d 1026, 1029 (6th Cir.1990), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991).

A similar "best evidence rule" objection was put forth by defense counsel in *United States v. Martin,* 920 F.2d 393 (6th Cir.1990). In *Martin,* a government informant taped certain conversations he had with the defendant concerning a cocaine purchase. The government played the tapes for the jury at trial. Thereafter, the prosecution asked the informant, on direct examination, certain questions about the transaction that was the subject of the taped conversations. *Id.* at 397. The defendant objected to the informant's testimony, claiming that the tape, as the best evidence, spoke for itself. *Id.* The district court overruled the objection.

On appeal, we rejected defendant's "best evidence" argument and held that the informant's testimony was properly admitted. *Id.* We explained:

First, the conversation on the tape was between the defendant and a testifying witness and was introduced while the witness was on direct examination. Under such circumstances the witness, if the prosecutor asks, is free to first describe that conversation in his own words and indicate what was said and what occurred. The tape may then be played as corroboration. If the tape is played first, however, it does not mean that a party to the conversation is thereby prohibited from testifying relative to the event.

*Id.* (footnote omitted). Furthermore, the *Martin* Court emphasized that Fed.R.Evid. 1002 "is not relevant to this situation" because the "intention here is not to prove the content of a recording but rather to corroborate a conversation which the government claims to have occurred." *Id.* n. 3. *Martin* convinces us that the district court did not abuse its discretion in admitting Spencer's testimony.

### G.

■ As the next assignment of error, Allen and Reynolds challenge the sufficiency of the evidence supporting their convictions. Defendants who claim "insufficiency of the evidence" bear a very heavy burden. *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.) (quoting *United States v. Soto,* 716 F.2d 989, 991 (2d Cir.1983), *cert. denied,* 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986)). The standard of review for such a claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989) (emphasis in the original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)); *United States v. Duranseau,* 19 F.3d 1117, 1121 (6th Cir.1994).

■ Reynolds argues that there is no evidence to link him to the commission of a crime because the nine audiotapes introduced by the government did not "directly" link him to any conspiracy to purchase marijuana. Reynolds contends that, at most, the govern-

ment has shown his mere presence at the scene of the crime.

As established in *United States v. Meyers,* 646 F.2d 1142 (6th Cir.1981), "[t]he existence of a criminal conspiracy, need not be proven by *direct* evidence, a common plan may be inferred from circumstantial evidence." *Id.* at 1144 (emphasis added) (citing *United States v. Luxenberg,* 374 F.2d 241, 250 (6th Cir.1967)); *see also Duranseau,* 19 F.3d at 1121 ("circumstantial evidence standing alone may sustain a conviction so long as the totality of the evidence was substantial enough to establish guilt beyond a reasonable doubt.") (quoting *United States v. Phibbs,* 999 F.2d 1053, 1064 (6th Cir.1993)). In addition, once the government establishes a conspiracy, "only slight evidence is necessary to implicate a defendant." *United States v. Poulos,* 895 F.2d 1113, 1117 (6th Cir.1990) (citing *United States v. Mayes,* 512 F.2d 637, 647 (6th Cir.) (citations omitted), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975)).

Review of the record before us shows that Reynolds was an active participant in the conspiracy as charged. The meeting of July 6, 1994 displays Reynolds climbing into the back of the Ryder truck along with Branham, and putting a sample of marijuana in his pocket. Although Branham later repudiated it on the stand, Spencer testified that Branham had told him Reynolds was representing the main money man. In his July 7, 1994 conversation with Officer Koerner, Reynolds indicated that Branham and Spencer were discussing payment with Allen. Finally, Reynolds had slightly over $4,000 on his person at the time of his arrest. Coincidentally, this figure, when added to Branham's $20,000 and Allen's $26,000, rounded out the total amount to $50,000, the negotiated figure for the drug transaction. Accordingly, we find that the government presented extensive evidence, although circumstantial, whereby a rational jury could have concluded that Reynolds willingly entered into and participated in the conspiracy for which he and the other defendants were charged.

Similarly, Allen asserts that, other than the videotape of him arriving at the scene of the crime, the evidence is insuffi-

cient such that a jury could not have rationally concluded that he committed the alleged crimes. Although it is evident that Allen made his first personal appearance in the case just before the arrests, that fact alone does not exonerate him from the conspiracy. The testimony at trial made it clear that there was someone behind the scenes who would be providing the bulk of the money for the marijuana purchase. On the day of the transaction, Allen arrived at the restaurant where the others were convening. Shortly thereafter, Spencer and Branham walked over to Allen's truck, and Allen showed Spencer a plastic bag full of U.S. currency. When asked by Spencer how much he had, Allen replied, "Half". Following the arrests, the police discovered that Allen had $26,000 in the bag, approximately "half" of the $50,000 needed to purchase the marijuana. Furthermore, on the morning of July 7, 1994, Branham told Spencer that the main money man liked the marijuana. Branham testified that he and Reynolds had smoked the marijuana sample with Allen on July 6, 1994. Finally, during the morning meeting of July 7, 1994, Branham stated that the third party was waiting near Boonesboro State Park to inspect the marijuana. At trial, both Branham and witness John Rayburn confirmed that Allen was the third party at Rayburn's residence near Boonesboro State Park. In sum, the totality of the evidence was substantial enough to establish Allen's guilt beyond a reasonable doubt. We affirm the district court's denial of Allen's motion for acquittal.

## H.

Next, Reynolds contends that the district court erred in denying his motion for a new trial. In support of his motion, Reynolds claimed that he lacked the appropriate mental capacity to effectively assist his counsel during trial due to a 1982 motorcycle accident. Pursuant to 18 U.S.C. § 4241(a), the district court scheduled a competency hearing on March 24, 1995 and ordered a competency evaluation of Reynolds pursuant to 18 U.S.C. § 4241(b). Reynolds was evaluated by his personal psychiatrist, Dr. Reynold Pounds, and also underwent extensive obser-

vation and testing at the Federal Correctional Institute in Butler, North Carolina.

 The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." *Blazak v. Ricketts*, 1 F.3d 891, 893 (9th Cir.1993) (quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)), *cert. denied*, —— U.S. ——, 114 S.Ct. 1866, 128 L.Ed.2d 487 (1994). *See also United States v. Long Crow*, 37 F.3d 1319, 1325 (8th Cir. 1994) (same), *cert. denied*, —— U.S. ——, 115 S.Ct. 1167, 130 L.Ed.2d 1122 (1995). Because a district court's determination of competency is a factual finding we apply a clearly erroneous standard of review. *United States v. Baker*, 807 F.2d 1315, 1320 (6th Cir.1986).

 At the March hearing, Dr. Pounds testified that as a result of his accident, Reynolds suffered from what is commonly referred to as frontal lobe syndrome. According to Dr. Pounds, Reynolds' injury "resulted in a significant impairment ... [which] could have significantly diminished his ability to fully understand the consequences of previous legal proceedings and to fully assist his attorney." In contrast, Dr. Mark Hazelrigg, a psychologist at the Federal Correctional Institute, concluded that Reynolds did not suffer from frontal lobe syndrome and believed that Reynolds was able to assist his counsel during the criminal proceedings.

By virtue of the split between the experts, the district court had before it, its observations during the trial, and a letter that Reynolds had written to the court. The court concluded that, in its opinion, Reynolds was able to understand the nature and consequences of the proceedings and assist in his own defense. In addition, the court acknowledged that the representation rendered by Reynolds' attorney was outstanding. Upon review of the evidence, we cannot find that the district court's finding was clearly erroneous.

## I.

Finally, Allen and Reynolds maintain that they were denied their right to an impartial and fair trial. The defendants filed motions for a new trial, alleging that information regarding Allen's previous criminal conviction had reached the jury and prejudiced its deliberation. Their allegations of juror misconduct were supported by the affidavit of John Rayburn, a trial witness and friend of Allen, in which he alleged that juror Kenneth Bryant knew him and had heard Rayburn discuss the case prior to trial.

The district court conducted an evidentiary hearing at which both Rayburn and Bryant testified. Rayburn claimed that he had recognized Bryant during jury selection and had subsequently informed the prosecution of that fact. Rayburn further testified that he had worked with Bryant prior to the trial, and had informed Bryant of Allen's prior convictions. Bryant admitted that he knew Rayburn and had worked with him in the past. However, when asked whether he knew prior to or during the trial that any of the defendants had prior criminal records, Bryant responded that he did not. Likewise, when questioned whether any juror, including himself, made any mention of Allen's criminal history during deliberations, Bryant replied, "No, we didn't". Spencer and Mark Wohlander, the United States attorney, also testified and denied Rayburn's version of events.

 The denial of a motion for a new trial based on juror misconduct is reviewed for abuse of discretion. *United States v. Bowling*, 900 F.2d 926, 935 (6th Cir.), *cert. denied*, 498 U.S. 837, 111 S.Ct. 109, 112 L.Ed.2d 79 (1990). Similarly, this standard governs a district court's determination of prejudice. *United States v. Lanier*, 33 F.3d 639, 657 (6th Cir.1994), *reh'g granted*, 43 F.3d 1033 (6th Cir.1995), *rev'd on other grounds*, 73 F.3d 1380 (6th Cir.), *cert. granted*, —— U.S. ——, 116 S.Ct. 2522, 135 L.Ed.2d 1047 (1996). The burden rests on the defendants to demonstrate that the alleged juror misconduct prejudiced their defense, and under no circumstance will prejudice be presumed. *United States v. Walker*, 1 F.3d 423, 431 (6th

Cir.1993) (citing *United States v. Zelinka*, 862 F.2d 92, 95–96 (6th Cir.1988)).

■ After reviewing and summarizing the testimony, the district court made the following determination:

> I am of the opinion that Mr. Bryant, and I find that Mr. Bryant, Mr. Spencer, Mr. Wohlander were credible; that the witness, Rayburn, was not credible here; that the defendants have failed to meet their burden. I will deny their motion.

Key to the court's determination was a note that Bryant had written to the court in regard to Rayburn's testimony. That note stated, "Ken Bryant, No. 43, through working on jobs, I have talked and met with the witness, John. I didn't know his last name." According to the court, if Bryant were attempting to hide anything or to influence the jury, he would not have sent that note to the court.

The record does not persuade us to conclude that the district court abused its discretion in denying defendants' motion for a new trial. Unless clear error is evident, we are hesitant to disturb a district court's factual findings, and we impart even greater deference where the findings depend upon credibility determinations. *United States v. Guzman*, 75 F.3d 1090, 1096 (6th Cir.1996); *United States v. Crousore*, 1 F.3d 382, 386 (6th Cir.1993). We find no such error.

## VI.

For the reasons stated herein, we AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.