**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Harvey James DURANSEAU, Defendant–Appellant.**

No. 93–1927.

United States Court of Appeals, Sixth Circuit.

Argued March 10, 1994.

Decided March 29, 1994.

---

Mark C. Jones, Asst. U.S. Atty. (argued and briefed), Flint, MI, for plaintiff-appellee.

Mark E. Weaver (argued and briefed), Birmingham, MI, for defendant-appellant.

Before: KENNEDY and MILBURN, Circuit Judges; and LIVELY, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Defendant appeals his jury conviction for making a false statement to a United States District Court in violation of 18 U.S.C. § 1001[1] and the sentence imposed. For the reasons stated below, we affirm in part and reverse and remand in part.

**I.**

Defendant Harvey James Duranseau was convicted for interstate transportation of stolen property. The defendant requested court-appointed counsel to represent him on the appeal of his stolen property conviction. His request was made on a form entitled "financial affidavit." There, the defendant represented that he had not received any income during the preceding 12 months and that the only real estate he owned was a home in Mio, Michigan.[2]

The defendant was subsequently indicted under 18 U.S.C. § 1001 for making a false statement in his "financial affidavit" with regard to the income he received within the past 12 months and his real estate holdings. At trial, the United States produced evidence that defendant, under the alias Alan Merrill, sold property at Bullock's Auction House in Flint, Michigan for approximately $18,000 in the 12 months prior to September 10, 1991. Additionally, the United States produced evidence that defendant sold property under the alias of Thomas Duranseau, at the Shipshewana Auction House in Shipshewana, Indiana, for which he received approximately $10,000 in the twelve months prior to September 10, 1991. Finally, the United States produced evidence that the defendant purchased property in Montana in January 1990 by using money held in accounts under the name of James Duranseau.

The jury returned a verdict finding the defendant guilty as charged. The District Court sentenced the defendant to 33 months of imprisonment and fined the defendant $30,000. This timely appeal followed.

**II.**

The defendant initially argues that the District Court erred when it allowed the United States to introduce evidence regarding his receipt of income under alias names and maintenance of bank account records under alias names. Defendant argues that this evidence was irrelevant, and if relevant, then its prejudice outweighed its probative value. We review a District Court's evidentiary rulings under an abuse of discretion standard. *United States v. Levy*, 904 F.2d 1026, 1029 (6th Cir.1990), *cert. denied*, 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991).

Specifically, the defendant contends that the District Court abused its discretion by allowing the United States to introduce the following evidence at trial: (1) admission of a

---

1. 18 U.S.C. § 1001 states:
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. The financial affidavit stated:
   Question: Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources?
   Answer: No.
   Question: Have you any cash on hand or money in savings or checking account?
   Answer: No.
   Question: Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?
   Answer: Yes.
   If yes, give value and describe it—Value, $38,-500; Description: house and property at 431 Sylvan Ct., Mio, MI owned jointly by myself and my wife.

book title found at defendant's home. The title is "The Paper Trip—92708—The New Paper Trip. ID: How to get it. How to disappear." (2) a note including references to "Wilfred and Abraham, Cohen, Fall '85 died"; (3) the death certificate of Alan Merrill; (4) application for a Michigan driver's license in the name of Alan Merrill; (5) registration documents in the name of Alan Merrill which pertained to the vehicle driven by the defendant; and (6) evidence regarding registration of a vehicle in the name of Tom Duranseau.

■ As part of the United States' case, it sought to prove that the defendant used false names in his effort to conceal income and real estate. Certainly, the admission of the book title and the note containing references to deceased parties had a tendency to prove that the defendant was using aliases. Thus, the District Court did not abuse its discretion under Fed.R.Evid. 401 with regard to the book title or the note. Additionally, Alan Merrill is the name that the defendant allegedly used when he was dealing with Bullock's Auction House. Defendant received checks totalling approximately $18,000 from Bullock's in the name of Alan Merrill after Merrill was dead. This evidence clearly made the United States' assertion that he was using false identities to hide income and property more probable and tended to prove that the income from Bullock's Auction House was defendant's property. We conclude that this evidence was relevant under Fed.R.Evid. 401 and the District Court did not abuse its discretion by admitting it.

■ With regard to the evidence that the defendant had a vehicle registered in the name of Tom Duranseau, defendant argues that this evidence was irrelevant to the question of whether he lied on the "financial affidavit." The United States counters that the defendant used the name Tom Duranseau when he dealt with the Shipshewana Auction House. From these dealings, the defendant received $10,000. The United States then produced testimony from a Secretary of State employee who identified the defendant as using the name Tom Duranseau when registering the vehicle. We agree that this testimony is relevant to show that the

defendant used the name Tom Duranseau and permitted the inference that the income from the Shipshewana Auction House was defendant's.

The defendant also argues that the District Court abused its discretion with regard to this evidence because the prejudicial impact outweighed its probative value under Fed. R.Evid. 403. We disagree. Any prejudicial impact that arises from the admission of this evidence exists because the evidence is probative that defendant had income and property he had not disclosed.

■ Next, defendant contends that the District Court abused its discretion under Fed.R.Evid. 403 when it admitted the following evidence: (1) bank records and testimony from employees of Farmers and Merchants State Bank in Hale, Michigan, regarding accounts in the names of Alan Merrill and Thomas Duranseau; and (2) bank records in the name of James Duranseau from the Wurtsmith Federal Credit Union and documents in a safety deposit box at the Wurtsmith Federal Credit Union. The defendant argues that the prejudicial impact of this evidence outweighed its probative value. Specifically, the defendant argues that he was charged with making a false statement to the District Court, not with using fictitious names. Further, defendant contends that the admission of this evidence confused the jury.

With regard to the bank records and testimony from employees of Farmers and Merchants State Bank in Hale, Michigan, the United States counters that several of the checks from Bullock's Auction House were cashed through these accounts. Further, the United States produced testimony that the defendant had received and signed checks from Bullock's.

With regard to the admission of bank records in the name of James Duranseau from the Wurtsmith Federal Credit Union and documents in a safety deposit box at the Wurtsmith Federal Credit Union, the United States contends that a check from this account was used to pay for the property in Montana. Additionally, the social security number attributed to this account was the

defendant's social security number. Further, the safety deposit box at this institution contained documents with the name Joe Blata on them. Joe Blata was the name used in the purchase of the real property in Montana. Finally, the United States produced evidence that checking account records from the Wurtsmith Federal Credit Union and in the name of James Duranseau were found during a search of the defendant's home. The United States also argues that the production of this evidence did not confuse the jury because the District Court specifically instructed the jury that the defendant was only on trial for making a false statement to the District Court. We believe that the probative value of this evidence clearly outweighed its prejudice. Also, we do not believe that a jury would be confused as to the crime charged simply because the United States introduced evidence that the defendant used aliases. The District Court did not abuse its discretion in admitting this evidence.

### III.

■ Next, the defendant challenges the sufficiency of the evidence supporting the guilty verdict against him. On appeal, the standard of review for claims of insufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Evans,* 883 F.2d 496, 501 (6th Cir. 1989) (emphasis in original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The defendant argues that the United States did not produce any evidence that he was the party who marked the "No" box in response to the question whether the defendant had received any other income in the preceding twelve months.

At trial, the United States produced expert testimony that the defendant signed the "financial affidavit." From this, the United States argues that the jury could infer that the defendant also marked the boxes on the "financial affidavit." Although this evidence is circumstantial, "circumstantial evidence standing alone may sustain a conviction so long as the totality of the evidence was substantial enough to establish guilt beyond a reasonable doubt." *United States v. Phibbs,* 999 F.2d 1053, 1064 (6th Cir.1993). Viewing the evidence in the light most favorable to the United States, we conclude that the United States has produced sufficient evidence that a rational trier of fact could conclude that the defendant is the person who marked the boxes on the "financial affidavit."

Next, the defendant argues that the United States failed to produce sufficient evidence that the money he received from selling the antiques at the auction house constituted income within the meaning of the "financial affidavit." Specifically, the defendant contends that the United States did not produce evidence of the manner in which the defendant acquired possession of these antiques. For example, the defendant urges that he may have sold these antiques for someone else or he may have received them as a gift.

The "financial affidavit" asks "[h]ave you received within the past 12 months any income from a business, profession, or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources?" We conclude that the receipt of monies for the sale of property constitutes income *from any source* under the terms of the "financial affidavit." The use of aliases permitted the jury to find that the proceeds of these sales belonged to or were appropriated by defendant. Thus, viewing the evidence in the light most favorable to the United States, the United States has produced sufficient evidence that the defendant received income as that term is defined in the "financial affidavit."

### IV.

■ The defendant produced evidence that during the one-year period he had settled a personal injury lawsuit for $25,000 and received $11,000. The defendant argues that the District Court erred by failing to instruct the jury that proceeds from a personal injury lawsuit for pain and suffering do not constitute income as that term is defined in the "financial affidavit." The defendant seems to

argue that the term "income" as used in the "financial affidavit" is limited to taxable income. We disagree. Because the "financial affidavit" asks whether the applicant received money from any source, we conclude that this definition is very broad and includes income from the settlement of a personal injury lawsuit for pain and suffering. That such income is excluded from gross income for tax purposes (26 U.S.C. § 104(a)(4)), does not change the fact that it is income, as income includes receipts of any kind. *Webster's New International Dictionary* 1258 (2d ed. 1941) (Unabridged). Thus, the District Court did not err in failing to instruct the jury on the exclusion of the personal injury settlement from income.

Next, defendant argues that the District Court erred by excluding certain testimony of the defendant's former counsel, William Weiler. Defense counsel asked "when a person who is injured receives monies in a personal-injury action, if those monies are determined as pain and suffering, ... does that have some significance with respect to the IRS?" The United States objected and the District Court sustained this objection. The District Court apparently concluded that the issue of whether monies received for pain and suffering were taxable was irrelevant. We agree. As stated, the tax treatment of monies received is irrelevant to the determination of whether the receipt of monies constitutes income or property under the terms of the "financial affidavit."

## V.

■ Next, defendant argues that the District Court erred by refusing to apply the "exculpatory no" doctrine in this case. One circuit has described the exculpatory no doctrine as "a defense to prosecution under § 1001 if the statements at issue amount to no more than a denial of criminal conduct in response to investigatory questioning by the government." *United States v. Barr,* 963 F.2d 641, 645 (3d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 811, 121 L.Ed.2d 684 (1992).

The defendant contends that the exculpatory no doctrine should be applied in this case in order to protect his Fifth Amendment right against self-incrimination. Specifically,

defendant sought to appeal his conviction for interstate transportation of stolen property. He asserts that he could not afford an attorney for the appeal. Thus, he filed the "financial affidavit," which is the subject of this case, in order to retain a court-appointed attorney. As stated, defendant represented that he had not received any income within the preceding 12 months in order to qualify for a court-appointed attorney. However, at trial in the case *sub judice,* the United States argued that the defendant lied on the "financial affidavit" because he received income from the sale of property at two separate auction houses during the relevant time period. The sale of this property at the auction houses was also the basis for his conviction for transportation of stolen property across interstate lines. If he had indicated that he had received income from the sale of stolen property, then, defendant argues, he would have relinquished his right to appeal the stolen property conviction because he would be admitting guilt. Alternatively, if the defendant did not complete the "financial affidavit," he could not obtain court-appointed counsel. Yet, by checking the no box on the "financial affidavit" question regarding income, he subjected himself to felony prosecution for making a false statement to a District Court.

We have rejected this doctrine in the past, *see United States v. Steele,* 933 F.2d 1313 (6th Cir.) (en banc), *cert. denied,* — U.S. ——, 112 S.Ct. 303, 116 L.Ed.2d 246 (1991), and decline to apply it in these circumstances. The defendant had already been convicted when he filled out the "financial affidavit." The United States could not use any admission on the form against him on that appeal. The defendant's argument that he was faced with either foregoing his appeal or lying on his "financial affidavit" is unpersuasive. Additionally, this is not a situation where the defendant was responding to a government investigation. Rather, the defendant was seeking a court-appointed attorney. We decline to apply the exculpatory no doctrine in this case.

## VI.

■ Next, the defendant contends that the District Court improperly applied the perju-

ry guideline, United States Sentencing Guidelines ("U.S.S.G.") § 2J1.3, instead of the fraud and deceit guideline, U.S.S.G. § 2F1.1, to establish his base offense level. Under Appendix A—Statutory Index, the general guideline applicable to a false statement conviction under 18 U.S.C. § 1001 is section 2F1.1. However, the commentary to U.S.S.G. § 2F1.1 provides that other guideline sections may be applied in certain circumstances. At note 13, the Commentary states:

> Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, ... although the offense is also covered by a more specific statute. Examples include false entries regarding currency transactions, for which § 2S1.3 would be more apt, and false statements to a customs officer, for which § 2T3.1 would be more apt. In certain other cases, the mail or wire fraud statutes, or other relatively broad statutes, are used primarily as jurisdictional bases for the prosecution of other offenses. For example, a state arson offense where a fraudulent insurance claim was mailed might be prosecuted as mail fraud. *Where the indictment or information setting forth the count of conviction ... establishes an offense more aptly covered by another guideline, apply that guideline rather than § 2F1.1. Otherwise, in such cases, § 2F1.1 is to be applied, but a departure from the guidelines may be considered.*

(emphasis added).

The United States contends that the District Court properly applied the perjury guideline because the defendant signed an "affidavit" which was submitted to the court. Thus, the United States contends that the defendant's conduct was more aptly covered by the perjury guideline rather than the fraud and deceit guideline.

We disagree. Our Circuit's "financial affidavit" form fails to recite that the information is submitted under oath or penalty of perjury. Although titled an affidavit, it is not really an affidavit since it is not "sworn to or affirmed before some person legally authorized to administer an oath or affirmation." *Ballentine's Law Dictionary* 44 (3d ed. 1969). Thus, the defendant did not commit perjury by filing the form and his conduct is not more aptly covered by the perjury guideline. We therefore reverse and remand for resentencing under the fraud and deceit guideline, U.S.S.G. § 2F1.1.

### VII.

Next, the defendant argues that the District Court erred by imposing a fine of $30,000 because he is financially unable to pay it. The presentence report proposed a fine range of $3,000—$30,000. The defendant did not object to the proposed range. A failure to object to a presentence report waives any future objections. *United States v. Velasquez,* 868 F.2d 714, 715 (5th Cir.1989). Thus, the defendant has waived any objection to the imposition of the fine which was within the range recommended.

### VIII.

For the reasons stated, we **AFFIRM** the conviction. We **REVERSE** the judgment and **REMAND** for resentencing in accordance with this opinion.