**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Cheryl WARD, a/k/a Cheryl Morris (97–6089), Earl Morris (97–6199), and Larry Turnley, a/k/a "L.T." (97–6200), Defendants–Appellants.**

Nos. 97–6089, 97–6199, 97–6200.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 15, 1998.

Decided Sept. 7, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 5, 1999.

Robert Anderson, Asst. U.S. Atty., Office of the U.S. Attorney, Nashville, TN, Vicki S. Marani (argued and briefed), U.S. Department of Justice, Appellate Section, Criminal Division, Washington, DC, for Plaintiff–Appellee.

Martin S. Pinales (argued and briefed), John P. Feldmeier (briefed), Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for Defendant–Appellant Cheryl Ann Ward.

Charles R. Ray (argued and briefed), Nashville, TN, for Defendant–Appellant Earl Morris.

Sabin R. Thompson (argued and briefed), Williams & Prochaska, Nashville, TN, for Defendant–Appellant Larry Turnley.

Before: RYAN, SUHRHEINRICH, and COLE, Circuit Judges.

RYAN, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. COLE, J. (pp. 492–94), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

RYAN, Circuit Judge.

The three defendants in this case, Earl Morris, Cheryl Ward, and Larry Turnley, were convicted of participation in a large cocaine distribution conspiracy. Their appeals raise the following issues:

- Whether there was sufficient evidence to support Ward's conviction for possession of cocaine and Turnley's conviction on the conspiracy count;

- Whether the district court erred by admitting in evidence, a certified copy of a judgment of Ward's previous conviction for a drug offense, which contained extraneous material;

- Whether the district court abused its discretion in refusing to grant Morris a separate trial;

- Whether there was a violation of 18 U.S.C. § 201(c)(2);

- Whether the district court abused its discretion in denying Morris and Turnley a mistrial or new trial because of alleged perjury, subornation of perjury, and denial of due process; and

- Whether the court erred when it included in the sentencing calculus, con-

duct for which Turnley was acquitted, thereby resulting in a life sentence. For the reasons discussed below, we will affirm in all respects.

## I.

A grand jury indicted the three defendants, as well as seven others, charging all with complicity in a very large cocaine trafficking conspiracy. All but the three defendants and Michael Smith pled guilty and agreed to cooperate with the government and testify at the defendants' trial in return for reduced sentences for some, and the promise of a sentence reduction recommendation pursuant to section 5K1.1 of the Sentencing Guidelines for others. Michael Smith was acquitted on all counts.

The indictment charged Morris and Ward with distribution and possession with the intent to distribute cocaine on April 10, 1995, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, the aiding and abetting provision. Six additional counts charged Morris and Ward with possession of cocaine, on dates ranging from July 27, 1994, through March 14, 1995. All of the codefendants, including the three appealing here, were charged with conspiring to distribute and possess cocaine from June 1, 1994, through April 10, 1995, in violation of 21 U.S.C. § 846. Morris was charged with engaging in a continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 848. Morris and Ward were also charged with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (2). In addition to the conspiracy counts, Turnley was charged with distribution and possession with intent to distribute cocaine base on April 24, 1996, and possession with intent to distribute cocaine base on June 12, 1996.

During trial, many of the defendants' co-indictees testified, and the following details of the conspiracy were revealed. Morris was the head man in the conspiracy; his supply of cocaine started the distribution ring. His girlfriend, Ward, was said to be second-in-command. Some witnesses testified that Ward was in charge when Morris was not around; others, however, testified that she was merely present during the drug transactions, and had only a minor role. Morris and Ward, who lived in Los Angeles, California, transported cocaine to Norvell Terry in Nashville, Tennessee, and to Terry's cousin, Marcus Holder, in Indianapolis, Indiana. The quantity sold to Terry was very large, usually around 30–40 kilograms per delivery, while Holder would receive much smaller quantities, approximately 5 to 10 kilograms.

Terry would distribute 30–40 kilograms in a matter of hours, by selling fairly large quantities to many of the codefendants, including Turnley. He would collect the money, usually $22,000–$26,000 per kilogram, keep his share, and deliver the rest of the money to Morris and Ward. Terry testified regarding all of the transactions during the conspiracy time frame, and his testimony was corroborated by telephone records, and records from hotels in Nashville, where the cocaine changed hands.

The conspiracy ended in April 1995, when authorities were tipped off that Terry and Melissa Spangler, who helped Terry count money, were engaged in large drug transactions in Nashville. The transaction began at Terry's house in Nashville on April 9, 1995. Morris and Ward arrived at Terry's house and placed two large duffel bags containing 38 kilograms of cocaine in a shed on Terry's property. The bags were later transported from the shed to one Quintinia Lewis's vehicle, and then to Spangler's rented car. On the morning of April 10, 1995, Terry and Spangler moved from the Super 8 Motel to the LaQuinta Inn, and there, the police began surveillance. Later that day, Terry and Spangler met at a park, and Terry realized they were being followed. Spangler returned to the motel and was subsequently arrested. The police searched her car and discovered the 38 kilograms of cocaine.

Spangler agreed to cooperate with the police. She placed a recorded phone call to Terry, who eventually turned himself in to police. Terry then agreed to place a recorded phone call to Morris, telling him that Spangler had been arrested. Morris said he would get his people on the case to further develop the situation, thereby acknowledging his involvement with Terry and Spangler. Terry made a deal with the authorities and revealed the entire conspiracy, including the details of the conspirators' money laundering. Eventually, all the conspirators were arrested, and all but the three defendants here and Smith pled guilty and agreed to cooperate.

After a lengthy trial, the convictions were as follows: Ward was convicted of six of the seven possession counts, the conspiracy count, and money laundering. She was sentenced to 262 months in prison. Morris was found guilty of six of the seven possession counts, the conspiracy count, and the money laundering charges, but was acquitted of the continuing criminal enterprise charge. He was sentenced to 360 months in prison. Turnley was convicted of the conspiracy count and the possession charge that resulted from a search of his home on June 12, 1996, but was acquitted of the distribution that allegedly occurred on April 24, 1996. Based on his extensive criminal history, including as relevant conduct, the April 24 transaction, of which Turnley was acquitted, he was sentenced to life in prison. All three defendants challenge their conviction, and Turnley appeals his sentence as well.

## II.

■ Ward and Turnley challenge the sufficiency of the evidence as to some, but not all, of the crimes of which they were convicted. In reviewing the district court's denial of Ward's and Turnley's motions for acquittal, we must determine, while reviewing the facts in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Odom*, 13 F.3d 949, 958–59 (6th Cir.1994).

## A.

■ Ward challenges the six counts that allege possession of cocaine prior to the April 10, 1995, transaction, which ended the conspiracy. To prove that a defendant violated 21 U.S.C. § 841(a)(1), the government must establish "that a person knowingly and intentionally distributes or possesses with intent to distribute a controlled substance." *United States v. Forrest*, 17 F.3d 916, 919 (6th Cir.1994). To prove that Ward aided and abetted the drug transactions under 18 U.S.C. § 2, the government must establish that Ward participated in the venture as something she wished to bring about and sought to make succeed. *See Odom*, 13 F.3d at 959–60.

■ Ward argues that there were very few references to her in any of the testimony during the trial, and that many of the witnesses, such as Spangler, testified only to meeting Ward or that Ward assisted her with the transportation of the cocaine. However, Holder testified that he delivered drug money to Ward, received cocaine from her, and considered her to be second-in-command. Terry testified that Ward was present during most of the transactions, and that she would count the money when it was delivered. He also testified that Ward would sometimes deliver drugs, although his testimony in that regard lacked specificity. The thrust of Ward's argument is that the government has not shown that she did anything more than associate with Morris; and she claims that her presence at the drug transactions can be explained by the fact that she was Morris's girlfriend.

The government points out that to prove that Ward aided and abetted in the possession and distribution of cocaine, it need only show that Ward participated in the drug transactions in such a manner that would indicate that she had an active role in assuring that the enterprise succeeded.

While it appears that Ward's role in the venture was relatively minor, especially as compared to some of the other participants, there was testimony that she delivered drugs, counted drug proceeds, and drove the car that other participants used to deliver drugs or drug proceeds. These activities are more than sufficient evidence to support Ward's conviction as an aider and abetter. Accordingly, we affirm Ward's conviction.

## B.

**■]** Turnley challenges the sufficiency of the evidence for his conviction on the conspiracy count only. The essential elements of the conspiracy charged against Turnley are: "(1) an agreement by two or more persons to violate the drug laws, and (2) each conspirator 'knew of, intended to join and participated in the conspiracy.'" *United States v. Elder*, 90 F.3d 1110, 1120 (6th Cir.1996) (citation omitted).

**■** "Proof of knowledge is satisfied by proof that the defendant knew the essential object of the conspiracy.... Every member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." *United States v. Hernandez*, 31 F.3d 354, 358 (6th Cir.1994) (internal quotation marks and citation omitted). The connection of the defendant to the conspiracy need only be slight if there is sufficient evidence to establish the connection beyond a reasonable doubt. *See id.*

**■** Turnley argues that the only evidence against him was a "passing reference" by Terry that Turnley was one of the distributors. Turnley concedes that witness Ida Thompson testified that she knew Turnley to be one of Lewis's customers, but when Lewis testified, he never mentioned Turnley's name as one of his or Terry's customers. And while the government points to records of phone bills showing calls made between Terry and Turnley, Turnley rebuts this evidence by pointing out that there was evidence on the record that Terry sold a car to Turnley, and that Turnley could not have been involved in any drug transactions after February 1995, because he had been in jail.

While the evidence of Turnley's participation in the charged conspiracy is meager, we cannot say, particularly given Terry's and Thompson's testimony, that no rational trier of fact could have found Turnley guilty beyond a reasonable doubt. Terry's testimony, that Turnley was one of his distributors, might conceivably have been rejected by the jury on the ground that Terry was a convicted drug dealer who struck a deal with the government; but that is a credibility call for the fact finder and we are unable to say that no rational juror could convict on such evidence. *See Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Accordingly, we affirm Turnley's conviction on the conspiracy count.

## III.

**■** We now turn to the question whether the district court erred in admitting a certified copy of a judgment and commitment order from Ward's previous drug conviction that contained extraneous material. The government sought to introduce evidence that Ward was previously convicted and sentenced in a federal court for possession with intent to distribute approximately 11 kilograms of cocaine on the authority of Federal Rule of Evidence 404(b) as proof that Ward had the requisite criminal intent to possess cocaine in this case. Ward objected, but the court allowed the prior drug conviction into evidence under Rule 404(b), instructing the jury that they were not to consider the prior conviction as evidence that Ward committed the crimes charged here, but only as evidence tending to prove that Ward had the requisite intent for the crime of cocaine possession. The court went on to instruct the jury that they could also use the prior conviction as proof of "motive, opportunity, intent, prepara-

tion, plan, knowledge, identity and so forth and the absence of mistake or accident"; these, of course, being all of the factors listed in Rule 404(b). Plainly, none of the named factors, save "intent" and possibly "knowledge," was in issue in the case and they were not justification for admitting the prior conviction evidence.

The document admitted to prove the prior conviction and sentence contained a statement by the sentencing judge that Ward was a "big-time drug dealer." At the time of the admission of the document, Ward did not object to this extraneous statement, and did not ask that it be redacted. Therefore, there is nothing in the record to suggest that the court did or did not perform an analysis under Fed.R.Evid. 403 to determine whether the probative value of the prior conviction was substantially outweighed by the prejudicial nature of that sentencing court's statement. However, during jury instruction discussions, Ward's attorney brought the "big-time drug dealer" comment to the court's attention, and objected to the admission of the document. The document had already been shown to the jury; therefore, the court suggested to Ward's counsel that he come up with a jury instruction to deal with the prejudicial comment. Not surprisingly, Ward's counsel declined to offer any suggestion, preferring not to further draw the matter to the jurors' attention.

■ Despite the district court's erroneous advice to the jurors as to the litany of purposes under Federal Rule of Evidence 404(b) for which they could consider the prior conviction, Ward does not argue that the commitment order should have been excluded. She argues instead that it was highly prejudicial to admit the order without excising the "big-time drug dealer" statement. But a party opposing the admission of a document on the ground that it contains prejudicial matter, "has the burden of requesting redaction and forfeits the right to exclude the statements if [s]he fails to make the specific request." *See Engebretsen v. Fairchild Aircraft Corp.*,

21 F.3d 721, 731 (6th Cir.1994). Because Ward did not properly object to the unredacted judgment order, our review is limited to an assessment for plain error. *See United States v. Cowart*, 90 F.3d 154, 157 (6th Cir.1996). We have held that we may exercise our discretion to reverse for plain error only when the failure to do so would result in a manifest miscarriage of justice. *See Finch v. Monumental Life Ins. Co.*, 820 F.2d 1426, 1432 (6th Cir.1987). We do not believe the district court's apparent failure to notice the four-word comment in the five-page document can properly be characterized as error so serious as to result in a miscarriage of justice, particularly given that the defense counsel failed to bring the matter to the court's attention.

■ We point out, however, that while the commitment order was properly admissible under Federal Rule of Evidence 404(b) as evidence tending to show that Ward had the requisite intent to commit the crimes charged, we believe the jury instruction was erroneous. The district court simply listed all of the factors named in the rule for which evidence of uncharged misconduct might be admissible in any case, even though most of them were not applicable to this case. For instance, Ward's defense was not that she mistakenly thought she was selling powdered sugar instead of cocaine, thereby justifying Rule 404(b) evidence to prove "absence of mistake or accident," and no issue was raised in the case suggesting that "identity" was at issue. Similarly, the jurors could not possibly have understood how the prior conviction would have been relevant to prove "motive" or "opportunity" or "preparation" or "plan" or "and so forth," as instructed by the court. The district court should have instructed the jury that it could use the prior conviction only for its worth as proof that Ward had the intent to commit the crimes charged. Rule 404(b) evidence, even when properly admitted, under a properly limiting instruction, asks jurors to engage in mental gymnastics that

may well be beyond their ability or even their willingness. Such evidence has great potential for unfair prejudice, and ordinarily it is only the trial court's carefully and clearly articulated limiting instruction as to the specific purpose for which the evidence may be considered by the jurors, that avoids substantial unfairness to the accused. Here, the court's instruction was certainly error, but since there was no objection to this part of the instruction, the prior conviction was admissible for at least one of the purposes recited by the district court, and we decline to exercise our discretion to find "plain error." We do, however, caution district courts, when admitting Rule 404(b) evidence, to instruct the jury that the "other act" evidence may be considered only with respect to the specific factor named in the rule—usually only one—which is in issue in the case. If the district court is uncertain as to the specific purpose for which such evidence may be admissible, the court ought to inquire of the prosecutor as to the purpose for which it is being offered, and then make a determination whether, in the court's judgment, the named purpose is in issue in the case. Because the error was waived by reason of the defendant's failure to properly object, and on the whole may be deemed harmless, we affirm Ward's conviction.

## IV.

■ The next issue we must address is whether the district court abused its discretion in denying Morris's request for a separate trial. *See United States v. Hofstatter*, 8 F.3d 316, 323 (6th Cir.1993). Morris requested severance from the rest of the defendants several times. After the court ruled that it would admit Ward's prior conviction, Morris renewed his motion for a severance, claiming that Ward's prior conviction and designation as a "big-time drug dealer" would unfairly prejudice Morris because the two were associated. The court denied Morris's request, but instructed the jury that it was to consider the evidence as to each defendant separately and decide their guilt or innocence separately.

■ The general rule is that "in conspiracy cases, persons jointly indicted should be tried together—and the defendant has the burden of proving substantial prejudice from a refusal to grant a separate trial." *Id.*

Morris has not carried that burden here. First of all, the court's instructions were very clear that the jury should judge each defendant's case separately. And second, the evidence against Morris was overwhelming. It is highly implausible that Morris would be deemed guilty by association based on Ward's guilt, considering the strength of the evidence that Morris was the ring leader of the conspiracy and Ward was "second-in-command."

## V.

■ We now turn to the issue that has become the argument du jour in federal courts throughout the country: whether 18 U.S.C. § 201(c)(2) applies to situations in which federal prosecutors offer codefendants a reduced sentence or a sentence reduction recommendation pursuant to section 5K1.1 of the Sentencing Guidelines in exchange for cooperation with the government. Section 201(c)(2) provides that it is a crime for anyone to give, offer, or promise anything of value to any person, "for or because of the testimony ... given or to be given by such person as a witness upon a trial." The three defendants in this case argue that this provision applies to the facts of this case. We disagree. We note, however, that our resolution of this issue is simplified by an opinion of another panel of this court in *United States v. Ware*, 161 F.3d 414 (6th Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1348, 143 L.Ed.2d 511 (1999). In Ware, this court, in a thorough and well-reasoned opinion, held that section 201(c)(2) does not apply to prosecutors offering leniency in sentencing; and even if it did, the exclusionary rule would not

apply to the testimony of the witnesses who were offered lighter sentences in exchange for their testimony. *See id.* at 419–21. We will, as we must, follow the ruling of the Ware panel, and hold that 18 U.S.C. § 201(c)(2) does not apply to federal prosecuting attorneys.

## VI.

We next address the district court's refusal to grant Morris and Turnley mistrials or, in the alternative, new trials, on the basis of their claim that Terry committed perjury and subornation of perjury. They also allege that the combination of these alleged errors, as well as the district court's denial of Morris's motion for severance and the admission of Ward's prior conviction, so infected the trial that their due process rights were violated.

▉ The denial of motions for a mistrial or for a new trial are reviewed for an abuse of discretion. *See United States v. Moore*, 917 F.2d 215, 220 (6th Cir.1990), and *United States v. Garner*, 529 F.2d 962, 969 (6th Cir.1976).

▉ The government argues that, while there is some evidence that Terry perjured himself regarding collateral issues, his perjury was brought to the attention of the jury by the defendants themselves when all three defendants were given virtually unlimited latitude to cross-examine Terry and other witnesses regarding the collateral matters about which Terry lied.

The defendants rely on *United States v. Wallach*, 935 F.2d 445 (2d Cir.1991), in which the court held that the issue of whether perjured testimony requires a new trial depends on the materiality of the perjury and the extent to which the prosecution was aware of the perjured testimony. *See id.* at 456. We think *Wallach* does not apply here, because in that case the perjured testimony was not brought to the attention of the jury, whereas here, the court gave the defendants several opportunities to cross-examine and recross-examine the witnesses to bring any inconsistencies in testimony to the attention of the jury. We know of no rule that stands for the proposition that, even with full cross-examination, the introduction of perjured testimony per se warrants a new trial.

Regarding the defendants' claim of denial of due process, this court has stated that errors that might not be prejudicial when viewed alone, may together produce a fundamentally unfair trial. *See United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir. 1988). However, we have also cautioned that to give too much weight to the cumulative effect of errors would "violate the Supreme Court's warning in *Glasser v. United States*, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680 (1942): 'We must guard against the magnification on appeal of instances which were of little importance in their setting.'" *Ashworth*, 836 F.2d at 268 (parallel citations omitted). Because we have concluded that the district court did not err in its rulings and judgments, there is no cumulative effect from which to conclude that there has been a denial of due process.

## VII.

Finally, we turn to the one sentencing challenge: Turnley's claim that the district court erred when it included in the calculus of Turnley's sentence, conduct for which he had been acquitted, to wit, distribution and possession with intent to sell cocaine base on April 24, 1996. The facts of the charge are as follows: Turnley was in the car when one Thomasina Christian sold drugs to a confidential informant, but an earlier recorded phone call from the informant to Christian did not reveal Turnley's name. However, Christian testified that Turnley was the person who gave her the drugs and dictated the price. At sentencing, the court adopted the recommendation contained in the presentence report to include the marijuana equivalency of the crack cocaine as relevant conduct, in calculating Turnley's offense level. The

result is that Turnley's sentencing range was increased from 324–405 months to 360 months to life in prison. Based on Turnley's extensive criminal history, the court sentenced him to life in prison.

Turnley did not submit objections to the presentence report. Accordingly, the court did not explicitly declare that it found by a preponderance of the evidence that Turnley supplied the cocaine base to Christian for her sale to the informant. Instead, the court adopted the factual findings and guideline applications in the presentence report. Turnley argues two things: (1) that the court was obligated to find that the acquitted conduct was proved by clear and convincing evidence instead of the preponderance standard; and (2) at the very least, the court was required to make a finding on the record that the conduct occurred by a preponderance of the evidence.

 Because Turnley did not object to the presentence report, we review his argument that the court should have used the clear and convincing standard for plain error. *See United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Before a court can correct an error not raised below, it must determine that there was: (1) an error; (2) that is plain, i.e., well-settled in the law; (3) that affects substantial rights; and (4) that would result in a serious miscarriage of justice. *See United States v. Dedhia*, 134 F.3d 802, 808 (6th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 1844, 140 L.Ed.2d 1105 (1998). Despite some difference of opinion among the circuits as to which standard to use, *see United States v. Watts*, 519 U.S. 148, 156–57, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), this court has never adopted the clear and convincing standard, *see United States v. August*, 984 F.2d 705, 714 (6th Cir.1992). Accordingly, we hold that the court did not err, much less plainly err, when using the preponderance of the evidence standard.

 We review the district court's factual finding that the relevant conduct occurred by a preponderance of the evidence for clear error. *See United States v. Pierce*, 17 F.3d 146, 151 (6th Cir.1994). Despite the fact that Turnley was acquitted of the drug transaction, we cannot say that the court clearly erred in relying upon Christian's testimony to conclude, by a preponderance of the evidence, that the conduct for which Turnley was acquitted, indeed occurred.

 Regarding Turnley's contention that the district court did not make a finding on the record that the conduct occurred, this court held in *United States v. Wilson*, 920 F.2d 1290, 1295 (6th Cir. 1990), that because the district court adopted the presentence report as its findings of fact and law, the presentence report must be examined to determine whether sufficient findings were made on the record to support the sentence. But, this court has also stated that a failure to object to the presentence report waives any future objections. *See United States v. Duranseau*, 19 F.3d 1117, 1123 (6th Cir.1994). Because Turnley did not object to the presentence report that included a discussion of the relevant conduct, the district court was not on notice that it had to make more specific findings on the record. We do not believe that the district court erred when it included the acquitted conduct because it found by a preponderance of the evidence that the conduct occurred. Accordingly, we affirm the sentence.

### VIII.

For the above reasons, we **AFFIRM** the convictions of all three defendants and Turnley's sentence.

COLE, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority opinion, except section III, which addresses Ward's Fed.R.Evid. 404(b) claim. Because I believe that the admission of Ward's prior

judgment and commitment order was unfairly prejudicial, I respectfully dissent with regard to that issue.

As an initial matter, I do not believe that the majority opinion fully captures the unfairness to which Ward was subjected in this case. Indeed, reading the majority opinion, one might conclude that the only inflammatory material contained in Ward's prior judgment and commitment order was the court's "big-time drug dealer" comment. Certainly, there is no question that it was highly and manifestly prejudicial to allow the government to alert the jury to the fact that the United States District Court for the Eastern District of Kentucky had labeled Ward a big-time drug dealer.[1] As Ward points out, however, even more inflammatory was the order's relevant-conduct section, which concluded that Ward was responsible for the very acts at issue in this case. Thus, the district court permitted the government to introduce a document that contained another federal district judge's conclusion that, for all intents and purposes, Ward was guilty as charged.[2] I need not elaborate on the effect this must have had on the jury.

Given the prejudicial nature of the comments contained in the judgment and commitment order, as well as the prejudicial nature of the order itself, I would be inclined to reverse even if I agreed with the majority's conclusion that Ward waived her objection to the admission of this evidence. I do not agree with that conclusion, however. The majority's opinion places much emphasis on Ward's failure to specifically ask for a redaction of the judgment and commitment order at trial. Indeed, the majority writes that "Ward does not argue that the commitment order should have been excluded." This is not my understanding of either Ward's argument below or her argument before this court. Before trial, as the majority notes, Ward objected under Fed. R.Evid. 404(b) to the introduction of any evidence of her prior crime. Furthermore, she again objected under Rule 404(b) to the introduction of her prior judgment and commitment order.[3] As Ward notes, the redaction of the judgment and commitment order was merely one option available to the district court under Rule 404(b), as was excluding the order all together. Cf. *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir.1996) (stating that a court's exclusion of a tape recording under 404(b) could have either allowed proof on matter in question by other means or by playing less offending portions of the tape).

The majority is correct that Ward did not identify the specific inflammatory portions of the judgment and commitment order before it was admitted. Nevertheless, because Ward sought to invoke the court's discretion to exclude the judgment and commitment order in its entirety because it was more prejudicial than probative, her objections were sufficient to preserve the matter for review. See Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure, § 5036, at

---

1. The statement, which describes the reason why the court imposed a 240–month sentence on Ward for possessing cocaine with intent to distribute in 1994, reads as follows: "To promote respect for the law & provide just punishment, and act as a deterrent to future criminal activity. Deft. is a big-time drug dealer, but the sentence is just for the crime; A sentence of 240 mos. is sufficient and justified."

2. In this case, Ward stood accused of possessing cocaine with intent to distribute and distribution of cocaine on or about April 10, 1995. In Ward's prior judgment and conviction order, the court counted as relevant conduct "11.90 Keys and 38 Keys in April 1995."

3. Ward's attorney stated simply that "[t]here is an objection, Your Honor." The court noted the objection, and it is clear from the record that the court understood the nature of the objection. Indeed, the court shortly thereafter granted "[a]ll defendants ... a continuing objection to 404(b) evidence." See Fed.R.Evid. 103(a)(1) (requiring litigants to specifically state the grounds for objections "if the specific ground was not apparent from the context").

176 (1982) ("Counsel has done all that the Rule requires to preserve the point if he 'objects' on the ground of 'prejudice' under 403.").[4] There is no question that the district judge would have been more likely to exclude the evidence in question had Ward's attorney detailed the factors that the judge was to balance in this case, *see id.*, but I cannot conclude that this lack of detail constitutes a waiver.

In any event, it is clear that the district court failed to follow this court's instructions for the proper application of Rule 404(b).

> Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the specific purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts." ... After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove motive or intent or identity [or] some other purpose, is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must then determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the specific purpose for which they may consider the evidence.

*Merriweather*, 78 F.3d at 1076–77. As the majority notes, the district court erroneously instructed the jury—both when the order was introduced and again in the court's final jury instructions—that it might consider the judgment and commitment order for any one of a number of

purposes, rather than instructing the jury that it could consider the order only on the question of intent. In other words, "the district court plainly erred by instructing the jury that the [evidence was] admissible to prove 'opportunity,' 'preparation,' 'plan,' 'knowledge,' or 'absence of mistake.'" *Id.* at 1077 (emphasis added). Furthermore, there is absolutely no indication in the record that, prior to giving this erroneous instruction, the court conducted any sort of balancing under Rule 403. "Given the potential for confusion, misuse, and unfair prejudice from other act evidence, it is preferable that the district court make an explicit finding regarding the Rule 403 balancing." *United States v. Myers*, 123 F.3d 350, 363 (6th Cir.1997). Such balancing would have necessarily led to the conclusion that, although the government may have been entitled to introduce some evidence regarding the prior acts of the defendant, the judgment and commitment order was substantially more prejudicial than probative. A factor in balancing probative value and unfair prejudice is the availability of other means of proof. *See United States v. Latouf*, 132 F.3d 320, 329 (6th Cir.1997). The government, in fact, informed the court that it had witnesses who could testify as to Ward's prior possession of drugs, in the event that the court disallowed the judgment and commitment order.

Because I believe that the admission of the judgment and commitment order was error[5] under Fed.R.Evid. 403 and 404(b) and our case law, I dissent from the majority's opinion in this regard. I would reverse Ward's conviction and remand for a new trial.

---

**4.** In this circuit, district courts are required to conduct Fed.R.Evid. 403 balancing in evaluating a Rule 404(b) objection. *See United States v. Myers*, 123 F.3d 350, 363–64 (6th Cir.1997); *Merriweather*, 78 F.3d at 1076–77.

**5.** Additionally, I would not conclude that the error was harmless. *See Merriweather*, 78 F.3d at 1079.