NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0270n.06

No. 22-5195

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Jun 13, 2023 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE MIDDLE |
| TAVARIE WILLIAMS, | ) | DISTRICT OF TENNESSEE |
|  | ) |  |
| Defendant-Appellant. | ) | OPINION |
|  | ) |  |
|  | ) |  |

Before: WHITE, THAPAR, and NALBANDIAN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** After a jury found Defendant Tavarie Williams guilty of one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a), (b)(1), (c), and one count of transportation of a minor with intent to engage in prostitution or criminal sexual activity in violation of 18 U.S.C. § 2423(a), he moved for a new trial contending that the prosecution presented false testimony at trial. The district court denied his motion, and we AFFIRM.

I.

The following recitation of facts is largely taken from Jane Doe's testimony at trial and is limited to the facts necessary to understand this appeal.

On June 20, 2016, Jane Doe—a twelve-year old—ran away from her San Antonio, Texas home and encountered Defendant-Appellant Tavarie Williams. Williams waved at her from his car, but she did not wave back. He drove up to her, and when Doe refused to get in his car, he

"put a gun to [her] head, . . . pushed [her] in and locked the doors," telling her that she "was his girl now." R.279 PID 2497. Williams brought Doe back to his hotel room, where she met Arterio Holman for the first time. Holman helped Williams advertise Doe on a sex trafficking website. Holman also tried to have sex with Doe but was unsuccessful. Nevertheless, Williams immediately began trafficking Doe; that first night in San Antonio, Doe had sex with roughly five clients.

Williams brought Doe to Tennessee where he continued to traffic her. In Memphis, Doe had sex with three or four clients. They then went to Knoxville, where more "[men] came, had sex with [her], paid, and left." *Id.* PID 2506–07, 2569. After Knoxville they went to Nashville, where she had sex with three clients at a La Quinta hotel.

In July 2016, Doe reached out to her family for help. Law enforcement rescued Doe on July 29 from an Extended Stay hotel in Nashville and arrested Williams. According to Doe, Williams deprived her of food, drink, and sleep for the entirety of the thirty-nine days they were together.

After a trial at which Doe testified, a jury found Williams guilty of sex trafficking a minor in violation of 18 U.S.C. § 1591(a), (b)(1), (c), and transporting a minor with intent to engage in prostitution or criminal sexual activity in violation of 18 U.S.C. § 2423(a). Williams moved for a new trial, contending Doe's testimony was "so incredible, inconsistent, and problematic, that the convictions in [his] case cannot stand with any judicial integrity." R.291 PID 3367.

Williams identified nine fabrications in total. To establish the falsity of the first eight, he focused on Doe's earlier statements to law enforcement. First, Doe stated that when Williams waved at her during their first encounter, she waved back. Second, Doe stated that she "hopped" into his car and never mentioned any gun. R.293 PID 3386. Third, Doe stated that she had known

Holman for two years prior to seeing him in Williams's San Antonio hotel room. Fourth, she shared that Holman raped her. Fifth, Doe equivocated on the number of clients with whom she had sex on the first night; Doe's answers switched between ten, one, none, and four. Sixth, Doe stated she did not have sex with any clients in Memphis. Seventh, Doe told law enforcement that she went from Memphis to Nashville and then to Knoxville. Eighth, she stated she had sex with ten clients at the La Quinta hotel in Nashville. The ninth fabrication is obvious: Doe could not have been deprived of food, drink, and sleep for all thirty-nine days she spent with Williams because she would have died.

The district court denied Williams's motion for a new trial. It determined that Williams failed to show "that there [was] any reasonable probability that the false statements would have affected the judgment of the jury" because the "inconsistencies [did] not directly go to" the two charges' elements nor "cast doubt on the gravamen of the [prosecution's] entire theory of the case: that [Williams] transported Ms. Doe across state lines to pimp her out." R.305 PID 3965.

Williams timely appealed.

## II.

We review a trial court's denial of a motion for a new trial for "clear and manifest abuse of discretion." *United States v. Matthews*, 31 F.4th 436, 449 (6th Cir. 2022) (quoting *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007)). Because Williams asserts that the prosecution used perjured testimony, Williams must show "(1) that the statements were actually false; (2) the statements made were material; and (3) [the] prosecution knew they were false." *United States v. Farrad*, 895 F.3d 859, 885 (6th Cir. 2018) (alteration in original) (quoting *United States v. Pierce*, 62 F.3d 818, 833–34 (6th Cir. 1995)). A statement is not "actually false" if it reflects a "mere inconsistenc[y] in testimony." *Brooks v. Tennessee*, 626 F.3d 878, 894–95 (6th Cir. 2010) (quoting

3

*Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)). And a false statement is "material" only "if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Id.* at 895 (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

Preliminarily, we note that Williams has not shown that the first eight instances of allegedly perjured testimony were "actually false," as opposed to "mere inconsistencies." *Id.* at 894–95; *see Rosencrantz v. Lafler*, 568 F.3d 577, 585–86 (6th Cir. 2009) ("[I]nconsistencies between [] trial testimony," statements to the police, and "testimony at [a] preliminary hearing" did not "prov[e] indisputable falsity."). Clearly, however—and as agreed by all parties and the district court—the ninth statement is actually false.[1] It is impossible to go without food, drink, and sleep for thirty-nine days. But, in this particular instance, that facial impossibility is so obvious that Doe's claim would not have affected the jury's judgment. *See United States v. Collins*, 799 F.3d 554, 588 (6th Cir. 2015) ("Given that Ore's testimony was wholly unbelievable . . . , there is no reasonable likelihood that the jury believed Ore's incorrect statements.").

None of the statements had any reasonable likelihood of affecting the jury's judgment. For one thing, Doe was forthcoming that her answers at prior law enforcement interviews "might be a little different from what [she was] saying" at trial, R.279 PID 2524, and that there were "details [that she was] not very clear on," *id.* PID 2556; *see, e.g.*, *id.* PID 2618.

For another, Williams's cross-examination of Doe highlighted the discrepancies between Doe's answers at trial and her answers at law-enforcement interviews. *E.g.*, *id.* PID 2555–56 ("Q. Okay. So in the past when you told this story, you said that Mr. Williams drove by you and waved and you waved back, didn't you?"); *id.* PID 2559 ("Q. Okay. And now in your other three

---

[1]    It is also contradicted by other parts of her trial testimony where she identified what she ate with Williams: chicken, R.279 PID 2506; breakfast, *id.* PID 2546; bologna sandwich, *id.* PID 2565; and snacks, *id.* PID 2582.

statements you gave, would you agree with me that you've never before mentioned that he pulled a gun on you to force you to get in the car?"); *id.* PID 2563–64 ("Q. Okay. In your interview that you gave on July the 31st, you said that you had known [Holman] since you were about 9 years old, didn't you?"); *id.* PID 2601–02 ("Q. Okay. But isn't it true that when you were here for a meeting the day before Thanksgiving to prepare for trial, you made the statement that [Holman] had forcibly raped you?"); *id.* PID 2569 ("Q. Okay. Isn't it true, in the July 30th interview that you gave, you said that you had not done any prostituting in Memphis?"); *id.* ("Q. And isn't it true that in -- at least on the July 30th and the July 31st interviews, you said you went to Nashville first?"); *id.* PID 2565 ("Q. In the past in interviews, you'd said [you ate] a bologna sandwich, didn't you?"). When a witness "denie[s] any recollection of events and refuse[s] even to agree that [she] had made statements recorded," "what matters is that [a] jury [have] the opportunity to observe [the witness's] demeanor."[2] *United States v. Burks*, 974 F.3d 622, 626 (6th Cir. 2020); *United States v. Ward*, 190 F.3d 483, 491 (6th Cir. 1999) (introduction of false testimony did not warrant a new trial where cross examination brought "inconsistencies in testimony to the attention of the jury"). It is undisputed that Williams's jury had that opportunity.

The defense's closing also called attention to these problematic statements. *See* R.297 PID 3868–70 (defense counsel stating, at closing argument, that "when [Doe] was questioned about why she gave prior inconsistent statements, she kind of waffled."); *see Rosencrantz*, 568 F.3d at 585–86 ("The defense focused the jury on these inconsistencies, and it was up to the jury . . . to sort this out."). The defense expressly told the jury that they "get to decide" whether, in light of

---

[2] In denying a new trial, the district court called specific attention to Doe's demeanor in testifying about the alleged food-drink-and-sleep deprivation, noting "an apparent lack of conviction about what she was saying and a lack of appreciation of what naturally would be the impact on her of such total and severe deprivation." R.305 PID 3965 n.19.

the inconsistencies, Doe was "lying" or "trying to color her experience in a way that [the jury would] feel sorry for her." R.297 PID 3868–70. And the court instructed the jury that evaluating witness testimony involves asking, "[D]id the witness appear to be lying?" R.322 PID 4156.

We also note, as the district court did, that most of the statements do not go to the charged crimes' elements.[3] R.305 PID 3965. Williams's guilt does not turn on, for example, whether Doe waved to Williams, whether Williams used a gun to get Doe to enter his car, whether she knew Holman beforehand, whether Holman raped her, the precise number of clients Doe had in San Antonio, Memphis, or Nashville (*i.e.*, whether it was three clients or ten), or the order of cities Doe visited. Although the statements are relevant to Doe's credibility, their truth is not necessary to support the convictions.

Lastly, we agree with the district court's rejection of Williams's argument that the impact of Doe's testimony as a whole denied him due process. *Id.* PID 3965–66; *see* Appellant Br. at 22 ("Given this testimony[,] it is difficult to see how Jane Doe's testimony wouldn't have affected the judgment of the jury in this matter."). The prosecution did not hinge its case on Doe's testimony. Rather, the "other testimony and evidence admitted at trial support[ted] th[e] notion that [Williams] pimped out Ms. Doe." R.305 PID 3949. That evidence included Holman's

---

[3] To convict Williams of sex trafficking of a minor, the jury had to find that (1) Williams knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means a person, (2) Williams knew or recklessly disregarded the fact that the person was under 18 years old and would be caused to engage in a commercial sex act, and (3) the offense was in or affected interstate commerce. R.322 PID 4160; *see* 18 U.S.C. § 1591(a), (b)(1), (c).

To convict Williams of transporting a minor with intent to engage in prostitution or criminal sexual activity, the jury had to find that (1) Williams knowingly transported an individual, (2) the individual transported was under 18 years of age, (3) Williams intended the individual to engage in prostitution or criminal sexual activity, and (4) the transportation was in interstate commerce. R.322 PID 4162–63; *see* 18 U.S.C. § 2423(a).

testimony, testimony from a prostitute Williams asked to teach Doe "proper protocol," Doe's advertisements on the sex-trafficking website, text messages between Williams and Doe, photos from Williams's cell phone, DNA evidence, and Williams's testimony itself, which corroborated many aspects of the prosecution's theory. Sitting as the "thirteenth juror," the district court characterized this evidence as "overwhelming," *id.* PID 3957, 3966, and we cannot say it abused its discretion in doing so.

III.

For these reasons, we **AFFIRM** the district court's denial of Williams's motion for a new trial.